Filed 11/2/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PERFORMANCE TEAM FREIGHT SYSTEMS, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JORGE GARCIA ALEMAN et al.,<br><br>    Defendants and Respondents. | B259146<br><br>(Los Angeles County<br>Super. Ct. No. BS149624) |

APPEAL from an order of the Superior Court of Los Angeles County. Susan Bryant-Deason, Judge. Reversed and remanded with directions.

Ogletree, Deakins, Nash, Smoak & Stewart, Johnnie A. James, Robert R. Roginson, Kathleen Choi for Plaintiff and Appellant.

McAvoy & Rivera, D. Briana Rivera, Patricia Shackelford for Defendants and Respondents Jorge Garcia Aleman, Silvia De Leon, Mauricio Orellana, Eulalio Figueroa, Jorge Gomez Galvin, Martin Gonzalez, Jose Martin Gonzalez, Jose Luis Gonzalez, Erasto Granados, Samuel Luna Granados, Jorge Luis Gutierrez Solis, Juan Medel, Victor Orozco, Carlos Paredes, Armando Diaz, Alejandro Salazar, Ruben Funez Torres, Aldo Vargas and Miguel A. Bravo Villalobos.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Paul S. Chan, Thomas V. Reichert, Douglas A. Fretty; Willeken Wilson Loh & Delgado, Paul J. Loh, Aarti K. Wilson for Defendant and Respondent Julie A. Su.

_____

The individual respondents are truck drivers who entered into "Independent Contractor Agreements" with appellant. After the individual respondents filed wage claims against appellant, appellant petitioned to compel arbitration based on arbitration provisions in the agreements. The trial court denied the petition, ruling that the agreements were exempt from the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) because the individual respondents were transportation workers and arbitration was not compelled under California law. The trial court also found that the arbitration provisions did not apply to the individual respondents' claims.

We reverse. Respondents presented no evidence supporting their argument that the agreements were exempt from the FAA, and we find that the arbitration provisions were broad enough to cover the claims asserted. Moreover, respondents failed to submit any evidence in support of their additional argument that the agreements were unconscionable. The trial court, therefore, erred by denying appellant's petition to compel arbitration.

## BACKGROUND

Appellant Performance Team Freight Systems, Inc. (Performance Team) is a motor carrier company involved in warehousing, shipping, and distributing merchandise from the Ports of Long Beach and Los Angeles to locations throughout California and the United States. The individual respondents[1] are truck drivers who provided trucking services to Performance Team.

At various points in 2012 through 2014, the individual respondents filed wage claims for unreimbursed business expenses and improper deductions with the Division of Labor Standards Enforcement (DLSE). Respondent Julie Su is the California Labor Commissioner, head of the DLSE, which investigates wage claims filed by California

---

[1]     The individual respondents are Jorge Garcia Aleman, Silvia De Leon, Mauricio Orellana, Eulalio Figueroa, Jorge Gomez Galvin, Martin Gonzalez, Jose Martin Gonzalez, Jose Luis Gonzalez, Erasto Granados, Samuel Luna Granados, Jorge Luis Gutierrez Solis, Juan Medel, Victor Orozco, Carlos Paredes, Armando Diaz, Alejandro Salazar, Ruben Funez Torres, Aldo Vargas, and Miguel A. Bravo Villalobos.

2

workers. (Lab. Code, § 98, subd. (a).) Following the filing of a wage claim, the commissioner may either accept the matter and conduct an administrative hearing (commonly known as a "Berman hearing"), prosecute a civil action for collection of wages and other money due to employees, or take no further action. (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946.) In matters where a Berman hearing is held, the commissioner determines whether the claimant was an employee, and issues an order, decision, or award stating, among other things, whether any sums are owing to the claimant. (*Id.* at p. 947; Lab. Code, § 98.1.) "The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims." (*Post*, at p. 947.)

In this matter, the commissioner set hearings for the individual respondents' wage claims. In July 2014, however, prior to commencement of the Berman hearings, Performance Team filed in the superior court a petition to compel arbitration and motion to stay the Berman hearings. Performance Team asserted that each of the individual respondents entered into "Independent Contractor Agreements" that set forth the terms of trucking services to be provided to Performance Team. The agreements contained an arbitration provision stating: "Any dispute between the parties with respect to the interpretation or the performance of the terms of this Agreement may be submitted to arbitration by reason of either party giving written notice of its desire for arbitration to the other party."

Performance Team argued that the subject agreements were governed by the FAA, and that the individual respondents' claims fell within the scope of the arbitration provision and were subject to arbitration. In moving for arbitration, Performance Team submitted copies of each of the agreements signed by the individual respondents. Performance Team also submitted the declaration of its driver manager. The declaration discussed the work performed by the individual respondents and circumstances surrounding the execution of the subject agreements.

The commissioner filed opposition papers to Performance Team's petition. The commissioner argued that the claims asserted by the individual respondents were not

3

covered by the arbitration provision, that the individual respondents were exempt from the FAA because they were transportation workers, and that, in any event, the agreements were unconscionable.

The individual respondents filed a response to Performance Team's petition, generally denying all contested allegations, but the individual respondents did not file a formal opposition. Nor did they submit declarations or present evidence in opposition to the petition.

The trial court denied Performance Team's petition to compel arbitration and its request to stay the Berman hearings. The court found that the individual respondents were exempt from the FAA and that, in any case, the wage claims were not covered by the arbitration provision.

Performance Team timely appealed.

## DISCUSSION

An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) When a trial court's order is based on a question of law, we review the denial de novo. (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) Decisions on issues of fact are reviewed for substantial evidence. (*Ibid.*)

In moving for arbitration, the petitioner bears the burden of showing, by a preponderance of the evidence, the existence of a valid arbitration agreement, while the party opposing the petition bears the burden of proving any defense. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*); *Garcia v. Superior Court* (2015) 236 Cal.App.4th 1138, 1145 (*Garcia*).)

### I. FAA section 1

The question of whether the individual respondents' claims are arbitrable turns largely on the application of the FAA. If this matter were governed only by California law, and not the FAA, then determining arbitrability would be straightforward. Although California has a "'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution'" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th

4

1, 9) and any doubts of arbitrability are resolved in favor of arbitration (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 26), Labor Code section 229 provides an exception under California law to this general rule favoring arbitrability. The statute states that actions to collect "due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." (Lab. Code, § 229.) Both sides here acknowledge that the individual respondents seek to recover due and unpaid wages within the meaning of Labor Code section 229.

Performance Team asserts, however, that Labor Code section 229 is inapplicable because the subject agreements are governed by the FAA. Section 2 of the FAA provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Accordingly, in most cases, the FAA mandates arbitration when contracts involving interstate commerce contain arbitration provisions. (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 10–11; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1351.) In matters in which the FAA applies, it preempts Labor Code section 229, requiring arbitration of claims that otherwise could be resolved in court. (*Perry v. Thomas* (1987) 482 U.S. 483, 490-492.)

The commissioner acknowledges that the subject agreements involve interstate commerce, but argues that they fall within a narrow exception, found in section 1 of the FAA (section 1). Section 1 exempts from coverage of the FAA "*contracts of employment* of seamen, railroad employees, or *any other class of workers engaged in foreign or interstate commerce*." (9 U.S.C. § 1, italics added; see also *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 109 (*Circuit City*).) This "'any other class of workers engaged in foreign or interstate commerce'" has been defined to mean "transportation workers." (*Circuit City*, at p. 121.)

5

Truck drivers who cross interstate lines usually are considered transportation workers. "The most obvious case where a plaintiff falls under the FAA exemption is where the plaintiff directly transports goods in interstate, such as [an] interstate truck driver whose primary function is to deliver mailing packages from one state into another." (*Veliz v. Cintas Corp.* (N.D.Cal. 2004) 2004 U.S. Dist. LEXIS 32208 at p. *18 (*Veliz*).) "[T]he FAA is inapplicable to drivers . . . who are engaged in interstate commerce." (*Harden v. Roadway Package Systems, Inc.* (9th Cir. 2001) 249 F.3d 1137, 1140 (*Harden*).)

It is not clear, however, that the individual respondents were transportation workers under section 1. There is no evidence in the record that the individual respondents ever provided interstate trucking services to Performance Team; rather, the parties agree that the individual respondents' routes were relatively short and to destinations within California. The commissioner argues that, by transporting international cargo from the Ports of Long Beach and Los Angeles to destinations within California, the individual respondents were transportation workers involved in interstate or foreign commerce. Performance Team counters that, because the individuals respondents worked exclusively within California, they were not engaged in foreign or interstate commerce.

We need not determine whether the individual respondents were transportation workers under section 1, though, because we find there is insufficient evidence to establish the other component of section 1—that the subject agreements were "contracts of employment."

"The FAA embodies a clear federal policy in favor of arbitration" (*Simula, Inc. v. Autoliv, Inc.* (9th Cir. 1999) 175 F.3d 716, 719), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25). Accordingly, the section 1 exemption is given a "narrow construction." (*Circuit City*, *supra*, 532 U.S. 105, 118.) The party opposing arbitration bears the burden of demonstrating that the exemption applies. (*Cilluffo v. Cent. Refrigerated Servs.* (C.D.Cal. 2012) 2012 U.S. Dist. LEXIS 188650 at

6

p. *11, citing *Rogers v. Royal Caribbean Cruise Line* (9th Cir. 2008) 547 F.3d 1148, 1151; *Owner-Operator Independent Drivers v. Swift* (D.Ariz. (2003) 288 F. Supp.2d 1033, 1035 (*Swift*); *Veliz*, *supra*, 2004 U.S. Dist. LEXIS 32208 at pp. **25-26.)

The only evidence relevant to the issue of whether the individual respondents entered into contracts of employment was presented by Performance Team, which submitted the subject agreements and the declaration of its driver manager.[2]  Each agreement was labeled "Independent Contractor Agreement" and specifically described each individual respondent as an "independent contractor."  Each agreement further stated:  "For all purposes, [individual respondent] shall be an independent contractor and not an employee of [Performance Team]."

A number of cases have examined the effect of similar agreements characterizing truck drivers as independent contractors.  The majority of these cases have held that the agreements should not be deemed "contracts of employment" unless the party opposing arbitration demonstrates that they are such.  (*Swift*, *supra*, 288 F.Supp.2d 1033, 1035-1036; *Villalpando v. Transguard Ins. Co. of Am.* (N.D.Cal. 2014) 17 F.Supp.3d 969, 982 (*Villalpando*); *Alvarado v. Pacific Motor Trucking Company* (C.D.Cal. 2014) 2014 U.S. Dist. LEXIS 109740 at pp. **10-12 (*Alvarado*); *Owner-Operator Independent Drivers v. United Van Lines, LLC* (E.D.Mo. 2006) 2006 U.S. Dist. LEXIS 97022 at pp. **7-10; *Port Drivers Federation 18, Inc. v. All Saints Express, Inc.* (D.N.J. 2011) 757 F.Supp.2d 463, 471-472; *Carney v. JNJ Express, Inc.* (W.D.Tenn. 2014) 10 F.Supp.3d 848, 852-854.)  This line of cases has held that "'unless the non-moving party proves to the Court that the FAA does not apply, the court should apply the characterization of the relationship described in the agreement and find that [the non-moving party] characterized as an independent contractor does not have a contract of employment with

---

[2]    The trial court did not consider the manager's declaration because it did not state when it was signed, in violation of Code of Civil Procedure section 2015.5.  We likewise do not consider the declaration.  We do consider the subject agreements, however, as neither side contends they were not properly before the trial court.

7

the carrier.'" (*Alvarado, supra*, 2014 U.S. Dist. LEXIS 109740 at p. *11.) This standard "'effectuates the FAA's goals'" because it "'not only furthers the complementary policies favoring arbitration and narrowly construing the FAA's exceptions, but also provides a sound methodology, having the non-moving party prove the FAA does not apply, for determining whether an agreement qualifies as a contract of employment.'" (*Id.* at p. *12.)

We see no reason to depart from the majority view, particularly given the factual posture presented on appeal.[3] The question of whether a worker is an independent contractor or an employee "is one of fact if dependent upon the resolution of disputed evidence or inferences." (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349.) In *Garcia*, the trial court considered documentary and testimonial evidence, conducting two days of hearings[4] before granting an order compelling arbitration. (236 Cal.App.4th 1138, 1143.) The trial court declined, however, to rule on the issue of whether claimant truck drivers (who signed documents labeled "Independent Contractor" agreements) had entered into "contracts of employment" under section 1. (*Garcia*, at p. 1147.) The Court of Appeal found that

---

[3]    The commissioner relies on a case with a contrary holding: *Owner-Operator Independent Drivers v. C.R. England* (D.Utah 2004) 325 F.Supp.2d 1252 (*C.R. England*), which found that "Independent Contractor Operating Agreements" entered into by plaintiff truck drivers were "contracts of employment." (*Id.* at pp.1257-1258.) We agree with *C.R. England*'s statement that "[f]or the purposes of [section 1], it is not dispositive that Plaintiffs are categorized in the Operating Agreements as employees or independent contractors." (*Id.* at p. 1258.) The opinion has no further application to this matter, though, because (unlike in *C.R. England*) the terms of the subject agreements here do not establish that the agreements created employer-employee relationships.

[4]    "Code of Civil Procedure sections 1281.2 and 1290.2 provide for summary proceedings in the trial court to resolve petitions to compel arbitration, in which the trial court sits as a trier of fact, weighing documentary evidence and any oral testimony that the court may hear in its discretion." (*Garcia, supra*, 236 Cal.App.4th at p. 1145, citing *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972, *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)

"[t]he evidence before the trial court was sufficient as a threshold matter to require the court's consideration of the issue," and remanded the matter to the trial court to make a factual determination whether the parties' agreements constituted contracts of employment.  (*Id.* at pp. 1148-1150.)[5]

Here, only minimal evidence was presented to the trial court relevant to the issue of whether the subject agreements were contracts of employment.  The subject agreements did not definitively establish that the individual respondents actually were independent contractors—that determination would require an analysis of evidence relating to issues including, among other things, the degree of control Performance Team exercised over the manner and means of the individual respondents' work, the right to discharge at will without cause, the type of work performed by the individual respondents, and whether the parties believed they created an  employer-employee relationship.  (See *Arzate v. Bridge Terminal Transport, Inc.* (2011) 192 Cal.App.4th 419, 426.)  Nevertheless, the only relevant, admitted evidence on the petition to compel arbitration—the agreements themselves—characterized the individual respondents as independent contractors and thus weighed in favor of a determination that the agreements were not contracts of employment.  (See, *e.g.*, *Swift*, *supra*, 288 F.Supp.2d 1033, 1035-1036; *Villalpando*, *supra*, 17 F.Supp.3d 969, 982; *Alvarado*, *supra*, 2014 U.S. Dist. LEXIS 109740 at pp. **10-12.)

Of course, the mere label "independent contractor" in an agreement does not by itself create an independent contractor relationship.  The subject agreements also contained terms consistent with an independent contractor relationship.  For example,

---

[5]    It appears that the trial court here also did not consider the issue of whether the agreements were "contracts of employment."  Although both sides presented argument relevant to the issue, the trial court made no mention of the issue at oral argument, and the court's order finding the individual respondents exempt under section 1 only cited to *Harden*, *supra*, 249 F.3d 1137, and *Circuit City*, *supra*, 532 U.S. 105, neither of which analyzed whether a putative independent contractor agreement was a contract of employment.

9

individual respondents (who were designated "Trucking Service" in the agreements) could refuse requests and assignments made by Performance Team, could select and hire drivers, and could choose days and hours of operations as well as routes. On the other hand, certain terms in the agreements were possible indications of an employment relationship. The individual respondents were given the option of using their own trucking equipment or leasing it from Performance Team, but it appears that most if not all respondents opted to lease, and the lease terms contained provisions limiting respondents' ability to use the equipment for non-Performance Team related services. On balance, however, the subject agreements more closely resemble independent contractor agreements than contracts of employment. The individual respondents potentially could have rebutted the presumption that the agreements were not contracts of employment by presenting evidence of an employment relationship (assuming such evidence existed), but they did not attempt to do so.

In sum, although an agreement of the sort here does not definitively establish an independent contractor relationship, it does weigh in favor of a conclusion that the agreement is not a contract of employment under section 1. Absent any countervailing evidence, we find that respondents failed to meet their burden in demonstrating that the section 1 exemption should apply. Therefore, the trial court erred by finding that the subject agreements were not governed by the FAA.

## II. Scope of the arbitration provision

Performance Team argues that the trial court further erred by finding that the individual respondents' claims were not covered by the arbitration provision. Only disputes that fall within the scope of an arbitration provision are arbitrable. (*Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 20 (*Elijahjuan*); *Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653.) "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (*AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648 (*AT&T Tech*).)

10

The arbitration provision in the subject agreements states: "*Any dispute between the parties with respect to the interpretation or the performance of the terms of this Agreement may be submitted to arbitration* by reason of either party giving written notice of its desire for arbitration to the other party. Said notice shall provide for each party to appoint an arbitrator, and a third (but no more than three [3]) arbitrator shall be selected by the two arbitrators and the majority decision of the arbitrators shall be final and binding on all parties. Any arbitration shall be conducted in Los Angeles, California, in accordance with the provisions of Title IX of the California Code of Civil Procedure, Section 1280 et seq. The costs of any such arbitration shall be shared equally by the parties." (Italics added.)

The commissioner argues that the individual respondents' claims against Performance Team—wage claims requiring a determination of whether Performance Team correctly classified respondents as independent contractors rather than employees under California law—are not disputes "with respect to the interpretation or the performance of the terms of" the agreements. The commissioner characterizes the scope of the arbitration provision as "narrow" and contends there is no controversy as to the terms of the agreements themselves.

In *Elijahjuan*, a case relied on by the commissioner, which involved claims of alleged misclassification of employees as independent contractors, the arbitration provision applied to disputes regarding the "'application or interpretation' of the parties' contracts." (210 Cal.App.4th 15, 17.) Division Eight of this district found, in the majority opinion, that the lawsuit did "not concern the application or interpretation of the Agreements, but instead seeks to enforce rights arising under the Labor Code benefitting employees but not independent contractors." (*Id.* at p. 21.) The court determined that the ultimate conclusion of whether workers were employees or independent contractors "is extracontractual and involves neither the application nor the interpretation of the Agreements. It involves consideration of petitioners' actual work." (*Id.* at p. 22.)

In so deciding, the *Elijahjuan* court cited to *Narayan v. EGL, Inc.* (9th Cir. 2010) 616 F.3d 895, 899, a case involving misclassification claims but not an arbitration

11

agreement. In finding that a choice-of-law provision regarding how the agreement would be "'interpreted and enforced'" did not apply to the plaintiffs' claims, the *Narayan* court wrote: "While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract." (*Narayan*, at p. 899.) The court noted, however, that the scope of the choice-of-law provision was "narrow." (*Id.* at p. 898.) Similarly, in *Elijahjuan,* the arbitration provision was "much more narrow and obviously differs from one encompassing '"any and all employment-related disputes."'" (210 Cal.App.4th at p. 24.)

In contrast, the language used in the arbitration provision here is not considered narrow. In *AT&T Tech*, the United States Supreme Court examined a provision nearly identical to the one in the subject agreements, that required arbitration of "'differences arising with respect to the interpretation of this contract or the performance of any obligation thereunder.'" (475 U.S. 643, 644-645.) The high court deemed the arbitration provision "broad." (*Id.* at p. 650.)

Division Eight of this district recently considered whether a broad arbitration provision covered misclassification claims in *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651. As in this case, the agreement at issue in *Khalatian* characterized the plaintiff as an independent contractor rather than an employee. The plaintiff alleged various Labor Code violations, asserting that an employer/employee relationship existed. (*Id.* at p. 655.) In finding arbitration required, the majority held: "Broad arbitration clauses such as this one are consistently interpreted as applying to extracontractual disputes between the contracting parties. . . . [¶] . . . Given the preference for arbitration, and the broad language of the Agreement, plaintiff's claims that the Labor Code governs his compensation . . . fall within the ambit of the arbitration clause." (*Id.* at p. 660.)

The individual respondents' claims likewise fall within the broad scope of the arbitration provision here, as the parties have disputes "with respect to the interpretation or the performance of the terms" of the agreements. The individual respondents contend

12

that they performed the trucking services required by the agreements, but that the performance required by Performance Team (in the form of compensation) was inadequate. Furthermore, an analysis of the individual respondents' status as employees or independent contractors will require an interpretation of the agreements' terms (among other evidence) to decide if the terms accurately reflect the parties' working relationship. Thus, the parties' dispute encompasses both the interpretation and performance of the subject agreements' terms.[6]

Therefore, the trial court erred by finding that the individual respondents' claims were outside the scope of the arbitration provision.

## III. **Asserted unconscionability**

Finally, the commissioner contends that, even if arbitration would otherwise be compelled, the subject agreements are unenforceable because they are unconscionable. The party asserting the defense of unconscionability bears the burden of proof on the issue. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910 (*Sanchez*).)

"'One common formulation of unconscionability is that it refers to "'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" [Citation.] As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power,

---

[6] The commissioner further contends that the phrase "may be submitted to arbitration by reason of either party giving written notice of its desire for arbitration" makes enforcement of the arbitration provision optional and not mandatory. We disagree. The provision gives any party the option to submit a matter to arbitration by giving notice, but once that option is exercised, arbitration is mandatory and binding; hence, the provision's term that "the majority decision of the arbitrators shall be final and binding on all parties." The two cases cited by the commissioner in support of its argument are not apposite. In *Briggs & Stratton Corp. v. Local 232, Intern. Union* (7th Cir. 1994) 36 F.3d 712, 715, each side elected not to arbitrate. The arbitration provision at issue in *Gangemi v. General Electric Co.* (2d Cir. 1976) 532 F.2d 861 was not similar to the one here, as it involved a number of significant preconditions to arbitration, and resolution did not turn on the phrase "may be submitted."

the latter on overly harsh or one-sided results. "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, '"which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."'"" (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133 (*Sonic II*).)

""'"The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.] But they need not be present in the same degree. "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" (*Sanchez*, *supra*, 61 Cal.4th 899, 910.)

The subject agreements contain terms that would support a finding of substantive unconscionability. The arbitration provision requires that costs of arbitration be shared equally by the parties. A provision can be substantively unconscionable if it imposes arbitration costs on an employee or similarly situated claimant that he or she would not bear when bringing the action in court. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 110; *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 636 (*Carlson*).) Furthermore, the arbitration provision does not provide for a proceeding similar to a Berman hearing within the context of arbitration. Waiver of the sort of protections afforded by a Berman hearing can support a finding of substantive unconscionability when the agreement "does not provide an employee with an accessible and affordable arbitral forum for resolving wage disputes." (*Sonic II*, *supra*, 57 Cal.4th 1109, 1146.)

Substantive unconscionability alone does not render a contract unenforceable, however. Procedural unconscionability must also be shown. (*Pinnacle*, *supra*, 55

Cal.4th 223, 247.) Procedural unconscionability exists in a contract of adhesion, one presented by the stronger party to the weaker party on a take-it-or-leave-it basis. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071; *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 179.) In determining whether an agreement is procedurally unconscionable, "courts focus on 'two factors: oppression and surprise.'" (*Carlson*, *supra*, 239 Cal.App.4th 619, 631.) """Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form.""" (*Pinnacle*, at p. 247.)

The commissioner argues that the subject agreements were adhesive and were not negotiated by the parties. If true, the individual respondents' inability to negotiate the agreements, and any lack of meaningful choice as to the terms of the agreements or the opportunity to opt out of the agreements, could have been established by declaration or other evidence. But respondents did not submit any evidence pertaining to the circumstances surrounding formation or execution of the agreements, and the terms of the agreements alone do not demonstrate that the agreements were adhesive. Based on the limited admissible record presented to the trial court, it is entirely possible that the agreements were the result of thorough, arm's length negotiations.

Other asserted signs of procedurally unconscionability are likewise unsupported. The commissioner argues that "[n]one of the agreements appear to have been accompanied by Spanish-language translations, despite the language preference of the drivers." In support of this argument, the commissioner cites to the fact that the individual respondents requested Spanish translators for the Berman hearings. No evidence was presented, however, that the individual respondents did not understand the subject agreements, that they requested Spanish translations of the agreements, that they would have benefited from Spanish translations, or that translations were never provided. The commissioner also contends that the Code of Civil Procedure was not attached to or explained in the agreements, even though it was referenced in the arbitration provision as establishing rules for arbitration. But there is no evidence regarding the extent of

15

materials respondents received from Performance Team, and, again, given the evidence (or lack thereof), it is possible that copies of relevant code provisions were supplied.

Absent any evidence, we cannot just assume there was procedural unconscionability. The commissioner cites to three cases that she contends support her position: *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, and *Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771. In each of these cases, the party opposing arbitration submitted evidence tending to show procedural unconscionability. (See *Carmona*, at pp. 80-81 [evidence presented that plaintiffs could not read English, were not given opportunity to negotiate, and understood that they could not work at car wash without signing the documents given to them]; *Samaniego*, at pp. 1145-1146 [evidence that plaintiffs could not read English, plaintiffs requested but were not given Spanish translations of documents, and plaintiffs were required to sign documents in order to work]; *Ajamian*, at p. 796 [plaintiff submitted declaration that she wanted to make changes to employment agreement, but was told she had to sign agreement to receive bonus and salary increase].) No evidence demonstrating procedural unconscionability was presented here.

With no showing of procedural unconscionability, the subject agreements cannot be deemed unenforceable due to unconscionability.

## DISPOSITION

The trial court's order denying appellant's petition to compel arbitration is reversed. The case is remanded to the trial court with directions to enter a new order granting the petition to compel arbitration. Appellant is awarded costs on appeal.

CERTIFIED FOR PUBLICATION.


                                                                    BOREN, P. J.

We concur:


ASHMANN-GERST, J.                                CHAVEZ, J.