Filed 8/2/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD ESPARZA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KS INDUSTRIES, L.P.,<br><br>    Defendant and Appellant. | F072597<br><br>(Super. Ct. No. CV284188)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Lorna H. Brumfield, Judge.

Call & Jensen, John T. Egley and Jamin S. Soderstrom for Defendant and Appellant.

Justice Law Corporation, Douglas Han, Shunt Tatavos-Gharajeh and Daniel J. Park for Plaintiff and Respondent.

-ooOoo-

Defendant KS Industries, L.P. appeals from an order denying its motion to compel arbitration of a dispute with a former employee.  The employee contends the lawsuit is a representative action under the Private Attorneys General Act of 2004 (PAGA).  (Lab. Code, § 2698 et seq.)  He argues the trial court properly applied the rule adopted in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) and concluded the lawsuit was a PAGA representative action not subject to arbitration.

KS Industries contends the trial court's failure to order arbitration of some of the claims violated the Federal Arbitration Act (9 U.S.C. § 1 et seq.) because those claims sought individualized (i.e., victim-specific) relief and were covered by the parties' arbitration agreement. KS Industries contends the rule adopted in *Iskanian* prevents the arbitration of claims only in representative actions that seek "civil penalties," a term of art that is limited to monetary relief allocated 75 percent to the Labor and Workforce Development Agency and 25 percent to the aggrieved employees. In KS Industries' view, "civil penalties" do not include unpaid wages payable solely to the aggrieved employee. We agree.

The Federal Arbitration Act plays a central role in this appeal. If the act requires a claim to be arbitrated, a contrary rule of state law must give way because of federal preemption. The Federal Arbitration Act requires the enforcement of arbitration agreements covering private disputes. Here, the arbitration agreement is worded to cover claims arising from the employment relationship, which includes the employee's claims for unpaid wages and other types of victim-specific relief. The State of California is not a party to the agreement and, thus, claims brought by it or on its behalf are not subject to arbitration. Therefore, under the Federal Arbitration Act, the claims that are private disputes between the employee and KS Industries must be arbitrated and the claims brought on behalf of the State of California need not be arbitrated. The rule adopted in *Iskanian* attempted to define the boundary between the two types of claims by stating that PAGA *representative* claims for *civil penalties* are not subject to arbitration.[1] We

---

[1] We italicized the terms *civil penalties* and *civil penalty* for the remainder of this introduction to emphasize that, as used by the California Supreme Court in *Iskanian*, they are terms of art with a precise meaning designed to avoid the reach of the Federal Arbitration Act. This precise meaning is narrower than the way the terms were used by the Legislature in Labor Code section 558 and by the court in *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112 (*Thurman*). (See pt. II.B.3, *post*.)

conclude that, for purposes of the *Iskanian* rule, PAGA representative claims for *civil penalties* are limited to those where a portion of the recovery is allocated to the Labor and Workforce Development Agency. Claims for unpaid wages based on Labor Code section 558 are not allocated in this manner and, therefore, the *Iskanian* rule does not exempt such claims from arbitration.

Applying the foregoing interpretation of the *Iskanian* rule and its term of art, *civil penalties*, to this litigation, we conclude some of the claims the employee is pursuing are PAGA representative claims that seek *civil penalties*. Under the *Iskanian* rule, those claims are not subject to arbitration. Our analysis does not end with that conclusion because the employee intended to pursue private claims for victim-specific relief, such as claims to recover wages under Labor Code section 558. The *Iskanian* rule does not exempt such claims from arbitration. This intention was based on the employee's misinterpretation of the Federal Arbitration Act, the PAGA and *Iskanian*. Before this litigation proceeds, the employee shall be required to clearly state whether he will continue to pursue the claims to recover wages under Labor Code section 558 that are subject to arbitration. Accordingly, we remand for further proceedings to allow the employee to unambiguously state his intention. Once his intention is clear, the trial court shall enter an appropriate order.**2**

We therefore affirm the order insofar as it denies arbitration of the representative claims for *civil penalties* and remand for further proceedings.

---

**2** If the employee intends to pursue the claims for unpaid wages on remand, the trial court must order those claims to arbitration and resolve whether to stay the litigation until the arbitration is completed. Alternatively, if he intends (1) to limit the claims pursued to PAGA representative claims seeking *civil penalties* (see fn. 1, *ante*) and (2) to waive the claims for individualized relief, then the litigation can proceed because the only claims being pursued will not be subject to arbitration.

## FACTS AND PROCEEDINGS

In January 2012, plaintiff Richard Esparza (Employee) completed an application for employment with defendant KS Industries, L.P. The application included the following arbitration provision:

> "I hereby agree to submit to binding arbitration all disputes and claims arising out of the submission of this application. I further agree, in the event that I am hired by the company, that all disputes that cannot be resolved by informal internal resolution which might arise out of my employment with the company, whether during or after that employment, will be submitted to binding arbitration. I agree that such arbitration shall be conducted under the rules of the American Arbitration Association. This application contains the entire agreement between the parties with regard to dispute resolution, and there are no other agreements as to dispute resolution, either oral or written."

In February 2015, Employee filed a complaint against KS Industries as an aggrieved employee on behalf of himself and other current and former aggrieved employees. The complaint stated the lawsuit was a representative action brought pursuant to the PAGA for violations of 16 sections of the Labor Code. The violations were based on allegations that KS Industries failed to (1) pay minimum and overtime wages, (2) provide meal periods and rest breaks, (3) pay wages in a timely manner, (4) provide complete and accurate wage statements, and (5) reimburse business expenses.

In March 2015, Employee filed a first amended complaint, which is the operative pleading in this lawsuit. The amended complaint continued to list the same 16 sections of the Labor Code, asserted essentially the same failures by KS Industries, and presented a single cause of action for violation of PAGA. The amended complaint also alleged written notice of KS Industries' alleged violations of the Labor Code had been provided to the Labor and Workforce Development Agency in February and the 33-day notice period had expired on March 24, 2015, without the Labor and Workforce Development Agency responding to the notice. Thus, Employee alleged he had exhausted the available administrative remedies and could pursue the claims in a lawsuit.

4.

As to damages, the amended complaint alleged Employee, individually and on behalf of other aggrieved employees, was entitled to recover "unpaid wages, civil penalties, interest, attorneys' fees and costs" as well as statutory penalties for each aggrieved employee calculated on the number of pay periods in which a violation occurred. Employee also alleged the right to recover "[a]n amount sufficient to recover unpaid wages under Labor Code § 558 [and] under Labor Code § 1197.1." The prayer for relief sought costs, attorney fees and "civil penalties and wages" pursuant to the PAGA for the violations of the listed Labor Code sections.

In July 2015, KS Industries filed a motion to compel arbitration and stay the proceedings. The motion stated Employee was trying to circumvent his arbitration agreement by filing a single, nonarbitrable cause of action under PAGA and stylizing the relief sought as civil penalties under PAGA. KS Industries argued the label "civil penalties" could not disguise the true nature of the relief sought, which was individualized damages, wages, reimbursement and statutory penalties. In KS Industries' view, these victim-specific types of relief are not "civil penalties" that the PAGA and *Iskanian* rule precludes from being arbitrated.

Employee's opposition to the motion to compel arbitration argued that a claim for civil penalties under the PAGA is not subject to arbitration and, for purposes of this rule, the civil penalties recoverable under the PAGA include the recovery of wages. Employee argued the plain language of Labor Code sections 558 and 1197.1 identifies wages as part of the civil penalties that are recoverable under the PAGA. Employee also contended some of KS Industries' arguments were not appropriate for a motion to compel, but might be presented in a motion to strike.

KS Industries' reply argued that Employee's interpretation of the PAGA conflicted with the Federal Arbitration Act and its directive for the enforcement of an arbitration agreement covering claims for victim-specific relief. KS Industries argued that federal directive preempted any contrary rule of state law. KS Industries also argued

5.

that a motion to strike was not appropriate because when arbitrable claims are combined with inarbitrable claims, courts may sever them and send the arbitrable claims to arbitration and stay further judicial proceedings on the other claims until the arbitration is completed.

In August 2015, the trial court held a hearing on the motion to compel. In September 2015, the court issued a minute order and directed Employee's counsel to prepare a ruling. The October 1, 2015, written ruling denied the motion to compel, denied the request for a stay of proceedings, and struck the words "statutory penalties" from paragraph 30 of the amended complaint "based on [Employee's] contention that he only seeks PAGA civil penalties and no individual damages." KS Industries appealed.

## DISCUSSION

### I. THRESHOLD MATTERS

#### A. Standard of Review

KS Industries contends the trial court's order denying arbitration was based primarily on the court's resolution of questions of law and, consequently, the order is subject to de novo review on appeal. (*Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1239.) KS Industries also contends, to the extent the trial court made findings to resolve conflicts in the evidence, the findings are reviewed under the substantial evidence standard of review. (*Ibid.*) Employee's appellate brief does not address the appropriate standard of review and, thus, does not contest the position taken by KS Industries.

We conclude that KS Industries has accurately identified the standards of review. Accordingly, our review of questions of law is de novo review and we review findings of fact under the substantial evidence standard.

B.    New Issues on Appeal

As a general rule, issues not raised in the trial court cannot be raised for the first time on appeal. (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.) KS Industries relies on this general rule in urging us not to consider Employee's arguments that (1) KS Industries failed to show the Federal Arbitration Act applied to the arbitration agreement; (2) the arbitration agreement is unenforceable under California law because it lacks mutuality and, thus, is unconscionable; and (3) a binding contract to arbitrate was never formed because KS Industries did not sign the document containing the arbitration provision.

The general rule against new issues is subject to an exception that grants appellate courts the discretion to address questions not raised in the trial court when the theory presented for the first time on appeal involves only a legal question determinable from facts that are (1) uncontroverted in the record and (2) could not have been altered by the presentation of additional evidence. (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 326-327; *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167.)

We conclude the exception to the general rule does not apply to the three new arguments raised on appeal by Employee. First, the claim that KS Industries failed to make a *showing* that the Federal Arbitration Act applied could have been addressed if it had been raised in the trial court because such a showing involves the presentation of evidence.

Second, Employee's argument about the lack of mutuality also could have addressed the presentation of extrinsic evidence relating to the interpretation of the arbitration clause. (See *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165-1166 [role of extrinsic evidence in contract interpretation].) Furthermore, the argument appears weak in light of the discussion of the mutuality of arbitration clauses using similar language, such as the words "I agree," in *Nguyen v. Applied Medical Resources Corp.* (2016) 4

7.

Cal.App.5th 232, at pages 251 through 253 and the cases discussed therein. The existence of these cases supports the inference that Employee's counsel intentionally omitted the argument from its trial court brief. (See Herrmann & Jenks, *Great Briefs and Winning Briefs* (Summer 1993) 19 Litigation 56, 57 [winning trial court briefs are focused; they choose the best argument and intentionally omit weaker arguments].)

Third, Employee's argument that it is unclear whether KS Industries ever signed the agreement because there is no signature and only a time stamp on the online employment application appears, to be directed at the contractual element of consent. (See Civ. Code, §§ 1550 [essential elements of a contract], 1565 [essentials of consent].) Under California law, consent to a written contract may be implied by conduct. (*DeLeon v. Verizon Wireless, LLC* (2012) 207 Cal.App.4th 800, 812 [signature is not the only form of assent under contract law]; *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420 [acceptance of agreement to arbitrate may be implied-in-fact].) If Employee had raised the issue consent in the trial court, KS Industries might have been able to present evidence of conduct tending to prove it consented to the terms in the employment application.

Accordingly, the new issues raised by Employee will not be considered by this court. We are not convinced those issues fall within the discretionary exception to the general rule prohibiting a party from raising a new theory or argument on appeal.

II.     MERITS OF THE APPEAL

Employee contends that the PAGA claims pursued in this lawsuit are outside the scope of the Federal Arbitration Act and, therefore, federal preemption does not require any of those claims to be arbitrated. KS Industries disagrees with Employee about the scope of the Federal Arbitration Act, contending the federal statute applies to Employee's claims seeking victim-specific relief and, therefore, federal preemption prohibits applying

8.

a rule of state law that would render the arbitration agreement unenforceable as to those claims.

In view of these contentions, our analysis begins with an overview of (1) the Federal Arbitration Act and its preemptive effect and (2) the PAGA and the *Iskanian* rule that precludes the arbitration of certain types of claims brought under the PAGA. This overview lays the foundation for analyzing the basic question presented in this appeal: Are some of the claims being pursued subject to arbitration under the Federal Arbitration Act or, alternatively, do those claims fall within California's rule prohibiting arbitration of representative claims brought under the PAGA?

A.     Federal Preemption

In 1925, the Federal Arbitration Act was enacted in response to widespread judicial hostility to arbitration agreements. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 (*Concepcion*).) Section 2 of the Federal Arbitration Act—its primary substantive provision—states in relevant part:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

The United States Supreme Court broadly interpreted the reference to a controversy "arising out of such contract or transaction" as applying to both statutory and contractual claims between the parties to an arbitration agreement. (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 635-637.) The interpretation furthers the liberal federal policy favoring arbitration. (*Concepcion*, *supra*, 563 U.S. at p. 339.) It also furthers the primary purpose of the statute, which is to ensure that private arbitration agreements are enforced according to their terms. (*Id*. at p. 344.) Thus, the statement in Employee's amended complaint that his "action is brought pursuant to

9.

PAGA" (as distinguished from claims for breach of contract) does not necessarily take the claims outside the scope of the arbitration agreement and the Federal Arbitration Act.

The liberal federal policy favoring arbitration sometimes conflicts with rules of state law that disfavor arbitration. When potential conflicts arise, a question presented is whether the state rule is preempted by federal law. For example, in *Concepcion*, the court considered whether the Federal Arbitration Act preempted California's rule classifying most class action or collective-arbitration waivers in consumer contracts as unconscionable. (*Concepcion*, *supra*, 563 U.S. at p. 340.) The court concluded "California's *Discover Bank* rule is preempted" by the Federal Arbitration Act.[3] (*Concepcion, supra,* at p. 352.)

B.     The PAGA

1.     *Concerns Addressed by Statute*

In 2003, the Legislature enacted the PAGA to address (1) the lack of prosecution of violations of the Labor Code that were punishable only as criminal misdemeanors and (2) the shortage of government resources to pursue enforcement. (*Iskanian*, *supra*, 59 Cal.4th at p. 379.) The Legislature dealt with the first problem by enacting civil penalties significant enough to deter Labor Code violations. (*Ibid.*) Where the Labor Code had not specified a monetary penalty for a particular violation, the PAGA imposed penalties for each aggrieved employee of $100 per pay period for the initial violation and $200 per pay period for each subsequent violation. (Lab. Code, § 2699, subd. (f)(2).)

---

[3]     In *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, the California Supreme Court addressed the validity of a class arbitration waiver. The court concluded that, at least in some circumstances involving small consumer claims, "the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration." (*Id*. at p. 153.) The court based its conclusion on a determination that, under the circumstances presented, the class arbitration waiver was unconscionable. (*Id*. at pp. 158–163.)

The Legislature dealt with the lack of resources for labor law enforcement by authorizing aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, provided that the Labor and Workforce Development Agency is notified of the alleged violations and does not take action within 33 days. (*Iskanian*, *supra*, 59 Cal.4th at pp. 379-380; see Lab. Code, § 2699.3, subd. (a).) Accordingly, the PAGA states that any civil penalty under the Labor Code that may be collected by the Labor and Workforce Development Agency or any agency "may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified" in the PAGA. (Lab. Code, § 2699, subd. (a).) When these civil penalties are recovered, 75 percent goes to the Labor and Workforce Development Agency and the remaining 25 percent goes to the aggrieved employees. (*Id*., subd. (i); see *Iskanian*, *supra*, at p. 380.)

### 2.    *Representative Actions*

The concept of a PAGA "representative action" plays a significant role in the arguments raised in this appeal. Our Supreme Court has identified a number of the legal characteristics of a PAGA representative action. First, an employee plaintiff suing under the PAGA does so as the proxy or agent of the state's labor law enforcement agencies, not other employees. (*Iskanian*, *supra*, 59 Cal.4th at p. 380.) Second, the employee plaintiff represents the same legal right and interest as those agencies—namely, the recovery of civil penalties that otherwise would have been assessed and collected by the Labor and Workforce Development Agency. (*Ibid*.) Third, California's collateral estoppel doctrine applies and causes the judgment in the action to bind the employee plaintiff, the state labor law enforcement agencies, and any nonparty aggrieved employees who would be bound by a judgment in an action brought by the agencies. (*Id*. at pp. 380-381.)

11.

Our Supreme Court provided a further explanation by describing a PAGA representative action as a type of *qui tam* action because it involves (1) a statute that exacts a penalty, (2) part of the penalty being paid to the informer, and (3) the informer being authorized to sue to recover the penalty. (*Iskanian*, *supra*, 59 Cal.4th at p. 382.) The allocation of a 25 percent portion of the civil penalties to all employees affected by the Labor Code violation did not prevent the court from characterizing a PAGA representative action as a *qui tam* action. (*Iskanian, supra,* at p. 382.) In a PAGA representative action, the government enforcement entity "is always the real party in interest in the suit." (*Iskanian, supra,* at p. 382.)

### 3. Civil Penalties

The distinction between civil penalties and statutory damages also is important to defining the scope of the *Iskanian* rule and its relationship to federal preemption. We begin our discussion by attempting to clarify the meaning of the terms.

This opinion uses the label "statutory damages" (not "statutory penalties") for the monetary relief provided by Labor Code provisions that falls outside the concept of "civil penalties" as that term in used in the *Iskanian* rule, which provides that PAGA representative claims for *civil penalties* are not subject to arbitration. We note that some cases quoted in *Iskanian* used the term "statutory penalties" (*Iskanian*, *supra*, 59 Cal.4th at pp. 380, 381). We do not use that term because it includes the word "penalties" and is potentially confusing when discussing how "civil penalties" differ from "statutory damages."

In *Iskanian*, our Supreme Court recognized the distinction between civil penalties and statutory damages: "The civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." (*Iskanian*, *supra*, 59 Cal.4th at p. 381.) To explain the distinction between civil penalties and statutory damages, the court stated that before the

12.

PAGA was added to the Labor Code, "civil penalties" were enforceable *only* by the state's labor law enforcement agencies.  (*Iskanian, supra,* at p. 381.)

Our Supreme Court illustrated the distinction between civil penalties and statutory damages by stating Labor Code section 225.5 provided an example of a "civil penalty." (*Iskanian*, *supra*, 59 Cal.4th at p. 381.)  Under that section, an employer that unlawfully withholds wages in violation of certain specified provisions of the Labor Code is subject to a civil penalty in an enforcement action initiated by the Labor Commissioner in the sum $100 per employee for the initial violation and $200 per employee for subsequent or willful violations.  (*Iskanian*, *supra*, at p. 381.)  Another example of a "civil penalty" is provided by Labor Code section 256, which states "[t]he Labor Commissioner shall impose a civil penalty in the amount not exceeding 30 days pay as waiting time under the terms of [Labor Code] Section 203."  (*Iskanian*, *supra*, at p. 381.)  The liability arising under these Labor Code provisions constitutes a "civil penalty" as that term is used in *Iskanian*, because the statutory text explicitly states the amounts are recovered or imposed by the Labor Commissioner.

In contrast, the Supreme Court referred to Labor Code section 203 as providing an example of "statutory damages" that an employee may collect in his or her individual capacity.  (*Iskanian*, *supra*, 59 Cal.4th at p. 381.)  Under that section, an employer that willfully fails to pay wages due an employee who is discharged or quits is obligated to pay the employee, in addition to the unpaid wages, an amount equal to the employee's daily wages for each day, not exceeding 30 days, the wages are unpaid.  (*Ibid.*)  Although the statute refers to the amount "as a penalty," it does not constitute a "civil penalty" as that term is used in *Iskanian* because it is payable to the employees and not a state agency.

Furthermore, civil penalties are distinguishable from statutory damages because civil penalties recovered in a PAGA representative action must be allocated 75 percent to the enforcement agency and 25 percent to the aggrieved employee.  (*Iskanian*, *supra*, 59

13.

Cal.4th at p. 380.)  Civil penalties are paid largely into the state treasury.  (*Id*. at p. 386.)

Thus, the state receives proceeds when civil penalties are imposed.  (*Id*. at p. 383.)  In

contrast, civil penalties do not include recoveries that could have been obtained by

individual employees suing in their individual capacities—that is, victim-specific relief.

(*Id*. at pp. 381, 386.)

In *Iskanian*, the Supreme Court did not discuss Labor Code section 558 or

*Thurman*.  As a result, it did not refer to the following statutory construction:

> "In our view, the language of [Labor Code] section 558, subdivision (a), is
> more reasonably construed as providing a civil penalty that consists of *both*
> the $50 or $100 penalty amount *and* any underpaid wages, with the
> underpaid wages going entirely to the affected employee or employees as
> an express exception to the general rule that civil penalties recovered in a
> PAGA action are distributed 75 percent to the Labor and Workforce
> Development Agency … and 25 percent to the aggrieved employees ([Lab.
> Code,] § 2699, subd. (i).)"  (*Thurman*, *supra*, 203 Cal.App.4th at p. 1145.)[4]

Employee argues *Thurman* remains the controlling authority on the interplay

between the PAGA and Labor Code section 558.  In Employee's view, the court in

*Thurman* used the term "civil penalty" in the same way that the term is used in the

*Iskanian* rule.  We disagree.  *Thurman* was decided two years before *Iskanian* and did not

involve an arbitration provision subject to the Federal Arbitration Act.  Consequently, we

conclude the *Thurman* court's determination that an award of unpaid wages under Labor

Code section 558 is a civil penalty does not control how we interpret the term *civil*

---

**4**　　We accept the second part of this statutory construction, which allows all of the
underpaid wages recovered under Labor Code section 558 to go to the aggrieved
employee, rather than being allocated under the PAGA's general rule requiring 75
percent to go to the government and 25 percent to the employee.  The provision in Labor
Code section 558 is more specific and, thus, controlling.  (See *State Dept. of Public
Health v. Superior Court* (2015) 60 Cal.4th 940, 960 [the rule that specific statutory
provisions take precedence of more general ones trumps the rule that later-enacted
statutes have precedence].)

14.

*penalty* as it is used in the *Iskanian* rule—a rule of nonarbitrability carefully crafted to avoid federal preemption.

      C.      <u>Relationship between Claims for Civil Penalties and Federal Preemption</u>

In *Iskanian*, our Supreme Court explained why a representative action under PAGA that sought only civil penalties was not subject to arbitration and why this rule of nonarbitrability was not preempted by the Federal Arbitration Act. (*Iskanian*, *supra*, 59 Cal.4th at pp. 378-389.) That explanation is summarized here.

Our Supreme Court reviewed the text of the Federal Arbitration Act and concluded the act's focus was on *private* disputes, not disputes between an employer and a state agency—parties with no contractual relationship. (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) As to United States Supreme Court cases applying the Federal Arbitration Act, our high court stated that, with one exception, those cases consisted "entirely of disputes involving the parties' *own* rights and obligations, not the rights of a public enforcement agency." (*Iskanian, supra,* at p. 385.)[5] Our high court then stated:

> "[A] PAGA claim lies outside the [Federal Arbitration Act's] coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees— that the employer has violated the Labor Code." (*Id.* at pp. 386-387.)

The court emphasized the distinction between a dispute between the state and an employer, which was not covered by the Federal Arbitration Act, and a private dispute between the employer and one or more employees by stating: "Our opinion today would not permit a state to circumvent the [Federal Arbitration Act] by, for example, deputizing

---

[5]     The exception was *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, a case that concluded the federal statute and an employment arbitration agreement did *not* prevent the federal agency from suing an employer on behalf of employees for backpay and reinstatement. The court stated the Federal Arbitration Act "ensures the enforceability of private agreements to arbitrate, but otherwise does not purport to place any restriction on a nonparty's choice of judicial forum." (*EEOC v. Waffle House, Inc.*, *supra*, at p. 289.)

employee A to bring a suit for the individual damages claims of employees B, C, and D." (*Iskanian*, *supra*, 59 Cal.4th at p. 387.) Thus, an employee's status as the proxy or agent of the state while pursuing a PAGA representative action is not merely semantic, but reflects the substantive role of the employee in enforcing California labor law on behalf of state agencies and producing (1) a judgment binding on the state and (2) monetary penalties that largely would go to state coffers. (*Iskanian, supra,* at p. 388.) Our high court closed its analysis of the Federal Arbitration Act and its preemptive effect as follows:

> "In sum, the [Federal Arbitration Act] aims to promote arbitration of claims belonging to the private parties to an arbitration agreement. It does not aim to promote arbitration of claims belonging to a government agency, and that is no less true when such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself. The fundamental character of the claim as a public enforcement action is the same in both instances. We conclude that California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the [Labor and Workforce Development] Agency's interest in enforcing the Labor Code, does not interfere with the [Federal Arbitration Act's] goal of promoting arbitration as a forum for private dispute resolution." (*Iskanian*, *supra*, at pp. 388-389.)

D.     Analysis of Employee's Claims for Relief

Employee's contention that his claim for unpaid wages constitutes a civil penalty is based on Labor Code section 558, subdivision (a), which provides in full:

> "(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a *civil penalty* as follows:

> "(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages*.

> "(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages*.

16.

"(3) *Wages recovered pursuant to this section shall be paid to the affected employee*." (Italics added.)

Employee argues this text clearly states that an award "an amount sufficient to recover underpaid wages" is a civil penalty. Employee further argues that this "civil penalty" under Labor Code section 558 constitutes a "civil penalty" within the meaning of Labor Code section 2699, subdivision (a) and a "civil penalty" for purposes of the rule adopted in *Iskanian*. We disagree. Employee's argument is based on semantics and not substance. One substantive aspect of the claim is the financial reality that 100 percent of the "amount sufficient to recover underpaid wages" is paid to the affected employee. (Lab. Code, § 558, subd. (a)(3).) In *Iskanian*, our Supreme Court clearly expressed the need to avoid semantics and analyze substance in determining the scope of representative claims that could be pursued outside arbitration without violating the Federal Arbitration Act. (See *Iskanian*, *supra*, 59 Cal.4th at p. 388.) In short, parsing the language in the California statutes does not determine the scope of the federal statute, which ultimately is the legislation that controls whether a particular claim by Employee is subject to arbitration.

Employee's attempt to recover unpaid wages under Labor Code section 558 is, for purposes of the Federal Arbitration Act, a private dispute arising out of his employment contract with KS Industries. In statutory terms, the wage claim is covered by "[a] written provision in … a contract … to settle by arbitration a controversy arising out of such contract." (9 U.S.C. § 2.) The dispute over wages is a private dispute because, among other things, it could be pursued by Employee in his own right. We recognize that private disputes can overlap with the claims that could be pursued by state labor law enforcement agencies. When there is overlap, the claims retain their private nature and continue to be covered by the Federal Arbitration Act. To hold otherwise would allow a rule of state law to erode or restrict the scope of the Federal Arbitration Act—a result that cannot withstand scrutiny under federal preemption doctrine. Therefore, we conclude

17.

preventing arbitration of a claim for unpaid wages would interfere with the Federal Arbitration Act's goal of promoting arbitration as a forum for private dispute resolution. (See *Iskanian*, *supra*, 59 Cal.4th at p. 389.)

Similarly, Employee's attempt to recover wages on behalf of *other aggrieved employees* involve victim-specific relief and private disputes. The rule of nonarbitrability adopted in *Iskanian* is limited to claims "that can *only* be brought by the state or its representatives, where any resulting judgment is binding on the state and any monetary penalties largely go to state coffers." (*Iskanian*, *supra*, 59 Cal.4th at p. 388, italics added.) These limitations are not met by the claims for unpaid wages owed to other aggrieved employees because (1) those employees could pursue recovery of the unpaid wages in their own right and (2) the unpaid wages recovered would not go to state coffers.

In sum, Employee's claims for unpaid wages are subject to arbitration pursuant to the terms of the parties' arbitration agreement and the Federal Arbitration Act. The rule of nonarbitrability adopted in *Iskanian* is limited to representative claims for civil penalties in which the state has a direct financial interest.

E.       Appropriate Appellate Relief

The trial court's order denied the motion to compel arbitration and struck the words "statutory penalties" from paragraph 30 of the amended complaint "based on [Employee's] contention that he only seeks PAGA civil penalties and no individual damages."

Our analysis of Employee's claims for the recovery of unpaid wages pursuant to Labor Code section 558 and the application of the Federal Arbitration Act to those claims leads to the conclusion that Employee's contention that he sought only civil penalties and no individual damages was wrong. Thus, it remains possible to interpret Employee's amended complaint as seeking the recovery of unpaid wages, which is a type of

18.

individual (i.e., victim-specific) relief. At this point in the proceedings, it is not clear whether Employee intends to relinquish his pursuit of those wage claims and pursue only PAGA representative claims that seek civil penalties or, alternatively, intends to continue pursuing claims for the recovery of unpaid wages.

Counsel for Employee drafted the order signed by the trial court and included the phrase "he only seeks PAGA civil penalties and no individual damages." We cannot interpret this phrase as a waiver of Employee's right to pursue claims for unpaid wages because that statement was based on a misunderstanding of applicable law. As such, it was not a knowing and intentional relinquishment of the right to pursue the recovery of unpaid wages. To resolve the uncertainty as to which claims Employee intends to pursue, we will direct the trial court to conduct further proceedings on remand that allow Employee to unambiguously state his intention about pursuing the claims for unpaid wages and any other types of individualized relief. If Employee intends to pursue those claims, they must be arbitrated. In that situation, the trial court must decide whether to stay the lawsuit until the arbitration is completed.

Alternatively, if Employee intends to (1) limit the claims pursued to PAGA representative claims seeking civil penalties paid largely into state coffers and (2) waive the claims for individualized relief (such as the recovery of unpaid wages pursuant to Lab. Code, § 558), then the litigation can proceed on those limited claims. In that situation, there is no need for an order referring claims to arbitration and possibly staying the litigation until the arbitration is completed.

**DISPOSITION**

The order denying the motion to compel arbitration is affirmed insofar as it denies arbitration of the PAGA representative claims seeking civil penalties that are paid, in whole or in part, to the Labor and Workforce Development Agency. The trial court is directed to conduct further proceedings to determine the plaintiff's intention with respect

19.

to the pursuit of other claims and, after his intentions are made clear, to enter an order that is consistent with this opinion.

The parties shall bear their own costs on appeal.

_____
FRANSON, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
SMITH, J.