Filed 6/2/15  Second modification for this opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDUARDO GARCIA, et al., | B257054 |
| Petitioners, | (Los Angeles County Super. Ct. No. NS026531) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| SOUTHERN COUNTIES EXPRESS, INC., | |
| Real Party in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on May 15, 2015, be modified as follows:

On page 11, the last paragraph beginning with "By failing to rule on the threshold question", the words "the trial court erred" shall be added to the end of the sentence and the full sentence shall read as follows:

"By failing to rule on the threshold question whether the arbitration provisions of their agreements were exempt from the application of the FAA by virtue of section 1 of the FAA and Labor Code section 229, the trial court erred.[11]"

---

[11] This is an issue for determination by the trial court, not by arbitration. (*Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 404, [87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270].)

There is no change in judgment.

CERTIFIED FOR PUBLICATION.

_____
ROTHSCHILD, P. J.   CHANEY, J.   JOHNSON, J.

Filed 5/27/15  Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDUARDO GARCIA, et al., | B257054 |
| Petitioners, | (Los Angeles County Super. Ct. No. NS026531) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| SOUTHERN COUNTIES EXPRESS, INC., | |
| Real Party in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on May 15, 2015, be modified as follows:

On page 11, the last paragraph beginning with "By failing to rule on the threshold question", the words "the trial court erred" shall be added to the end of the sentence and the full sentence shall read as follows:

"By failing to rule on the threshold question whether the arbitration provisions of their agreements were exempt from the application of the FAA by virtue of section 1 of the FAA and Labor Code section 229, the trial court erred.[2]"

_____

[2] This is an issue for determination by the trial court, not by arbitration.  (*Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 404, [87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270].)

There is no change in judgment.

CERTIFIED FOR PUBLICATION.

_____
ROTHSCHILD, P. J.          CHANEY, J.          JOHNSON, J.

Filed 5/15/15  Unmodified opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| EDUARDO GARCIA, et al., | B257054 |
| Petitioners, | |
| v. | (Los Angeles County Super. Ct. No. NS026531) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| SOUTHERN COUNTIES EXPRESS, INC., | |
| Real Party in Interest. | |

———————————

ORIGINAL PROCEEDINGS in mandate.  Michael P. Vicencia, Judge.  Petition granted in part and remanded.

Gilbert & Sackman, Joshua F. Young, Michael D. Weiner, Sean M. Kramer for Petitioners.

No appearance for Respondent.

Larson & Gaston, Victor J. Consentino for Real Party in Interest.

———————————

Petitioners Eduardo Garcia, Garcia Transportation GP, and Luis Torres-Garzon seek relief from the April 25, 2014 order of respondent court (Michael P. Vicencia, Judge) granting the motion of real party in interest Southern Counties Express, Inc. to compel arbitration of Petitioners' wage and hour complaints to the Labor Commissioner.[3] We grant the requested relief in part and remand to the trial court with directions.

## Background

Petitioners are truck drivers (sometimes called owner-operators) who were engaged by Southern Counties Express, Inc. (Southern Counties) to haul shipping containers from the ports of Los Angeles and Long Beach to facilities throughout Southern California. When engaged by Southern Counties, and at 90-day intervals thereafter, each of the drivers signed an "Independent Contractor" agreement (consisting of 17 pages, with appendices); at less-frequent intervals they signed "Vehicle Lease" agreements (consisting of 12 pages). The independent contractor agreements provided that the contracting driver would use the specified truck to provide hauling services at Southern Counties' direction; the Vehicle Lease agreements provided that the contracting drivers would lease a specified truck from Southern Counties for that purpose. And (as required by federal regulations governing Southern Counties as an authorized interstate carrier), that Southern Counties will have "exclusive possession, use and control of the Equipment and shall assume complete responsibility for the operation thereof to the extent required by such regulation . . . ." (See 49 C.F.R. §§ 376.11, 376.12(c)(1).) Each of the agreements contained provisions requiring the parties to submit any disputes arising under the agreements to arbitration.

The arbitration clauses of the most recent agreements provided that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement for the breach, termination, enforcement, interpretation, or validity thereof, including the applicability of Agreement to arbitrate, shall be determined by arbitration . . . ." They go on to provide

---

[3] In this opinion we refer to the petitioners in this court as "Petitioners," or drivers, notwithstanding their status as respondents in the trial court.

2

that the arbitration shall take place before a single arbitrator in Los Angeles County, administered pursuant to the JAMS Streamlined Arbitration Rules and Procedures; that judgment may be entered on the award; that the arbitrator may allocate all or part of the costs of the arbitration (including arbitrator's fees and the prevailing party's reasonable attorney's fees); and that any claim brought by the independent contractor must be in his or her individual capacity and not as a class or representative proceeding.[4]

In March 2013, Petitioners filed administrative claims with the California Division of Labor Standards Enforcement (DLSE) alleging Southern Counties' misclassification of Petitioners as independent contractors rather than employees. Their claims sought administrative relief under Labor Code sections 98 through 98.8, to recover minimum-wage payments, reimbursements of improper deductions from compensation and statutory penalties. (*Eduardo Garcia v. Southern Counties Express, Inc.*, case No. 05-55450 ADC; *Luis Torres-Garzon v. Southern Counties Express, Inc.*, case No. 05-57718 LT.)[5]

Southern Counties petitioned respondent court to compel arbitration of the claims in these cases, and to stay the DLSE proceedings in each of them. (*Southern Counties*

---

[4] The earlier agreements contained an arbitration provision that "in the event of any disagreement or litigation," such disputes would be resolved by binding arbitration, under the rules of the American Arbitration Association (AAA). The parties agree in this proceeding that to the extent arbitration is required, the more recent agreements would apply.

[5] Labor Code section 98 includes remedial procedures for adjudicating wage claims, enforced by the DLSE under the direction of the Labor Commissioner. Section 98, subdivision (a), provides the Commissioner with authority to investigate employee complaints and to provide hearings "in any action to recover wages, penalties, and other demands for compensation." The Commissioner may accept the matter and conduct what is known as a "Berman" hearing, a procedure designed to provide a speedy, informal, and affordable method of resolving wage claims in order "'to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex of wage claims.'" (*Post v. Palo/Haklar & Associates* (2000) 23 Cal.4th 942, 946-947.) The Commissioner may also file a civil action to recover unpaid wages (Lab. Code, §§ 98.3, 1193.6), as trustee of any funds collected. (Lab. Code, § 96.7.)

*Express, Inc. v. Eduardo Garcia, etc., et al.*, LASC No. NS026531; *Southern Counties Express, Inc. v. Luis Torres-Garzon*, LASC No. NS026539.)[6] The trial court (Michael P. Vicencia, Judge) considered documentary and testimonial evidence, and argument from the parties (including the Labor Commissioner on Petitioners' behalf), concerning Petitioners' claims that the arbitration provisions of their agreements are unconscionable, and therefore unenforceable. After two days of hearings, the court granted an order compelling arbitration under the JAMS Streamlined Arbitration Rules and Procedures.[7] It found the witnesses from Southern Counties to be very credible, and Petitioners' testimony to be less so. It found that because Southern Counties had needed drivers, Petitioners' bargaining position was not inferior to that of Southern Counties. It found that because Petitioners had not sought to negotiate any term of their agreements with Southern Counties, there was no evidence that Southern Counties had refused them that opportunity, or that the agreements were presented to them on a "take-it-or-leave-it" basis. It found that because Petitioners had been required to sign renewed independent contractor agreements at 90-day intervals, they had ample opportunities to review their agreements and to obtain legal advice concerning them. Based on these conclusions, the court ruled that the parties' agreements were not procedurally unconscionable. Its ruling was grounded on only the procedural unconscionability issue; the court did not consider or rule upon whether the agreements were or were not substantively unconscionable.

By timely petition to this court, Petitioners Garcia and Luis Torres-Garzon seek a writ of mandate or other extraordinary relief compelling respondent court to vacate its order granting Southern Counties' petitions to compel arbitration, and to enter a new order denying the petitions to compel arbitration and to permit the administrative

---

[6] The trial court in case No. NS026531 deemed the cases related, and ordered case No. NS026539 transferred and reassigned to be heard with case No. NS026531.

[7] The parties agree that any order for arbitration should be for arbitration by JAMS, as provided in the most recent agreements (rather than the AAA, as specified in the earlier agreements). They also obviated any stay order by agreeing to voluntarily continue the pending DLSE proceedings.

4

proceedings to continue before the DLSE. We requested opposition and issued an order to show cause. Southern Counties filed a return, to which Petitioners replied. We sought and received further briefing with respect to a number of issues, and we heard oral argument. We conclude that the order compelling arbitration must be reversed and the matter remanded to the trial court for consideration and determination of threshold issues concerning Southern Counties' right to arbitration.

## Discussion

### A. Applicable Law and Standard of Review

Strong public policies favor enforcement of agreements to arbitrate disputes. Under the California Arbitration Act (Code Civ. Proc., § 1280 et seq. (CAA)), "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ." (Code Civ. Proc., § 1281.2.) Under that provision, the court shall order arbitration of any dispute that it determines is within the parties' arbitration agreement unless the right to compel arbitration has been waived or the agreement is otherwise unenforceable. (Code Civ. Proc., § 1281.2.) Under both the CAA and the Federal Arbitration Act (9 U.S.C. § 1 et seq. (FAA)), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." (9 U.S.C. § 2; *AT&T Mobility LLC v. Conception* (2011) 563 U.S. ___ [131 S.Ct. 1740, 1748]; *Rebolledo v. Tilly's, Inc.* (2014) 228 Cal.App.4th 900, 912.)

With respect to agreements to which the FAA applies, the federal policy favoring arbitration preempts any state-law impediments to the policy's fulfillment. If a state law interferes with the FAA's purpose of enforcing arbitration agreements according to their terms, the FAA preempts the state-law provision, no matter how laudable the state law's objectives. (*AT&T Mobility LLC v. Conception*, *supra*, 131 S.Ct. at p. 1753; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384.) Under the

5

supremacy clause of the United States Constitution (art. VI, cl. 2), the FAA requires any conflicting state law to give way. (*Nitro-Lift Techs., L.L.C. v. Howard* (2012) ___ U.S. ___ [133 S.Ct. 500, 504]; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24-25 [103 S.Ct. 927, 941, 74 L.Ed.2d 765] [Under FAA "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"].)

Arbitration nevertheless is a matter of contract. No public policy favors requiring arbitration of issues that the parties have not agreed to arbitrate. (*Rebolledo v. Tilly's, Inc.*, *supra*, 228 Cal.App.4th at p. 912; *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 540-541.) In ruling on a motion to compel arbitration, the court, guided by general principles of California law, must first determine whether the parties actually agreed to arbitrate the dispute. (*Mendez v. Mid-Wilshire Health Care Center*, *supra*, 220 Cal.App.4th at p. 541.)

Code of Civil Procedure sections 1281.2 and 1290.2 provide for summary proceedings in the trial court to resolve petitions to compel arbitration, in which the trial court sits as a trier-of-fact, weighing documentary evidence and any oral testimony that the court may hear in its discretion. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) In such proceedings the petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, while a party opposing the petition bears the burden of proving any fact necessary to its defense. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

## B. The Trial Court Erred by Failing to Determine whether Petitioners' Claims are Exempt from the FAA

Despite the presumption in favor of arbitration imposed by the FAA, section 1 of that law expressly limits the FAA's application by exempting from its coverage certain contracts. Specifically, section 1 provides (in relevant part) that nothing in the FAA

6

"shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.) The United States Supreme Court interpreted this language in *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105 [121 S.Ct. 1302, 149 L.Ed.2d 234], reversing the lower court's ruling that had held the section 1 exemption from the FAA applicable to all contracts of employment. The better reading of the law, the Supreme Court held, is that Section 1 exempts only "contracts of employment of transportation workers"—meaning "workers actually engaged in the movement of goods in interstate commerce." (*Id.* at pp. 106, 112, 119.)[8]

The court in *Circuit City Stores, Inc. v. Adams* expressly declined to consider what does and does not constitute a "contract of employment" within the meaning of the FAA, section 1. (532 U.S. at p. 113.)

Petitioners contended in the trial court that because they are workers involved in the transportation of goods in interstate commerce, their contracts with Southern Counties are exempt from the FAA's application, and—despite the agreements' recitation that their status is that of independent contractors and not employees—the FAA therefore does not preempt the rights afforded by the Labor Code.[9] Southern Counties argues, to the

---

[8] In reaching that conclusion interpreted the language of the statute without reference to its legislative history, noting however that the legislative record on the section 1 exemption "is quite sparse." (*Circuit City Stores, Inc. v. Adams*, *supra*, 532 U.S. at p. 119.) The Court noted the absence of indications of congressional intent apart from testimony given in a Senate Committee hearing, adding that "[w]e ought not attribute to Congress an official purpose based on the motives of a particular group that lobbied for or against a certain proposal—even assuming the precise intent of the group can be determined, a point doubtful both as a general rule and in the instant case. It is for the Congress, not the courts, to consult political forces and then decide how best to resolve conflicts in the course of writing the objective embodiments of law we know as statutes." (532 U.S. at p. 120.)

[9] Petitioners also contended in the trial court that because their claims seek enforcement of rights afforded by the Labor Code, not enforcement of their rights under the agreements, their claims are not within the terms of their agreements to arbitrate disputes. And (joined by the Labor Commissioner, a named party in the trial court

7

contrary, that the independent contractor and vehicle lease agreements in this case are not "contracts of employment," and the section 1 exemption therefore does not apply.

Whether Petitioners' claims are exempt from the FAA's application is significant, because the FAA's application governs the outcome of Petitioners' challenges to the arbitration provisions' enforcement. If the FAA applies to Petitioners' claims, the arbitration provisions are "irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2; *Nitro-Lift Techs., L.L.C. v. Howard*, *supra*, 133 S.Ct. at p. 504; *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. ___, ___ [133 S.Ct. 2304, 2309]; *Perry v. Thomas* (1987) 482 U.S. 483, 489, 491.) But if their claims are exempt from the FAA's application, California law specifically provides that the arbitration agreements cannot apply to defeat the Labor Code enforcement sought by Petitioners' claims. Labor Code section 229 provides that "[a]ctions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Therefore if the FAA does apply, only very limited contract defenses (primarily under the doctrine of unconscionability) would be available to defeat Southern Counties' arbitration demand.[10] But if the agreements are exempt from FAA section 1, their arbitration provisions are trumped by Labor Code section 229 and its administrative and judicial procedures for the determination of Petitioners' claims.

---

proceedings), they contended that the arbitration agreements are unconscionable, both substantively and procedurally, rendering them unenforceable in any event. (The Labor Commissioner is not a party in this court.)

[10] Civil Code section 1670.5, subdivision (a), defines the unconscionability doctrine: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

A number of federal cases (none of them authoritative in this court) have considered whether the agreements involved in those cases are within the FAA's section 1 exemption. For example, in *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co. Inc.* (D. Ariz. 2003) 288 F.Supp.2d 1033, the court held that the FAA's section 1 exemption did not apply, because the plaintiff-drivers (who did not dispute that they were independent contractors rather than employees) failed to show they "should in fact be considered employees based on the terms of the contract and the circumstances of their working relationship with [the carrier]." (*Id.* at p. 1035.) The court in *Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.* (D. Utah 2004) 325 F.Supp.2d 1252, looked also to the parties' agreements and relationships to reach the opposite conclusion. It found that the agreements in those cases constituted "contracts of employment" within the meaning of the FAA's section 1 exemption, notwithstanding that the agreements identified the parties' relationships as that of "carrier and independent contractor and not as employer-employee." (*Id.* at pp. 1257-1258.)[11]

Southern Counties' effort to enforce the arbitration provisions of the parties' agreements raised the applicability of the FAA's section 1 exemption as a threshold issue. But the trial court ordered the matter to arbitration without hearing argument, taking further evidence, or indicating its consideration of the issue. It expressly limited the parties' argument and presentation of evidence to the single question whether the agreements were procedurally unconscionable (and concluded they were not). At the close of the January 2014 hearing the court scheduled further evidentiary hearings, but limited the issue to be heard to be only the agreements' "procedural and substantive unconscionability." At the evidentiary hearings the court instructed the parties to address only the issue of procedural unconscionability, and advised that "I'm not making a

---

[11] Other cases have considered the same or closely related questions, resting their conclusions at least in part on theories of tort law and provisions of federal transportation law that either may not apply here, or may have been superseded. (E.g., *Gagnon v. Service Trucking, Inc.* (M.D. Fla. 2003) 266 F.Supp.2d 1361, 1363-1367 & fns. 6-18, and cases cited therein.)

9

determination as to whether or not these were employees or not employees, but just the effect that [their understanding of the agreements] may have had on their ability to freely enter into the contractual relationship."

Petitioners were (and are) entitled to the court's determination whether their agreements are contracts of employment for transportation workers engaged in interstate commerce, within the meaning of the FAA's section 1 exemption as interpreted by the Supreme Court in *Circuit City Stores, Inc. v. Adams*, *supra*, 532 U.S. 105. That law, if it applies, would exempt their agreements from the FAA's requirement that their arbitration agreements must be enforced. There is a strong policy in favor of enforcing agreements to arbitrate, and under the FAA. "'Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" (*Armijo v. Prudential Ins. Co. of America* (10th Cir. 1995) 72 F.3d 793, 797, quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*. (1985) 473 U.S. 614, 626 [105 S.Ct. 3346, 87 L.Ed.2d 444]; see also *Moses H. Cone Memorial Hospital v. Mercury Construction Corp*., *supra*, 460 U.S. at p. 25 [103 S.Ct. 927, 74 L.Ed.2d 765].) Nevertheless, "there is no policy compelling persons to accept arbitration of controversies . . . which no statute has made arbitrable." (*Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481.)

The evidence before the trial court was sufficient as a threshold matter to require the court's consideration of the issue. The evidence relevant to the question whether the drivers' agreements Southern Counties were "contracts of employment" within the meaning of the FAA's section 1 exemption included evidence that Southern Counties owned the trucks it provided to Petitioners for their work hauling containers for Southern Counties' customers; that its leases of those trucks to Petitioners were coincidental with Petitioners' agreements to drive the trucks for the company's hauling business, and to be compensated for doing so (less lease payments for use of the trucks) without regard to the amounts paid to Southern Counties by the hauling customers.[12] Southern Counties

---

[12] The parties' agreements identify Petitioners, not Southern Counties, as the trucks' lessees, and Southern Counties disclaims having exclusive possession, use, or

10

provided Petitioners with commercial licenses and permits needed for entry into and exit from the ports of Los Angeles and Long Beach, where their loads were picked up. Southern Counties specified the insurance they would have, purchasing it for them and deducting the premiums from their compensation. Southern Counties required that its logo would be on the trucks' doors, and required installation of a GPS tracking service to permit it to monitor the progress of deliveries. The agreements' requirement that Southern Counties' identification must be removed from the truck's doors before the trucks could be used for any other purpose limited the truck's use to hauling only for Southern Counties during an agreement's term.

Plaintiff drivers allege they had no meaningful discretion in performing their work, and no realistic entrepreneurial opportunities for use of the truck supplied by Southern Counties. Southern Counties made delivery assignments to the drivers each day, in the order they signed in at Southern Counties' yard. Southern Counties' dispatcher would provide the driver with the location to pick up and deliver the shipping container, along with any special instructions; a driver's failure to follow the dispatcher's instructions in completing deliveries would result in the driver receiving fewer deliveries in the future. Drivers were paid by Southern Counties at regular intervals on the basis of each load delivered. The drivers had no relationship with the customers of Southern Counties for whom they hauled goods; they could not negotiate delivery rates with the customers, and they were not told how much the customers were paying to Southern Counties for their work.

By failing to rule on the threshold question whether the arbitration provisions of their agreements were exempt from the application of the FAA by virtue of section 1 of

---

control of the trucks it purportedly leased to Petitioners. But federal regulations require Southern Counties, as the licensed carrier, to certify its "exclusive possession, use and control" of the trucks operated under its license (49 C.F.R. § 376.12(c)(1)), while expressly providing also that compliance with the regulation is not intended to affect whether the driver-lessor is an employee or independent contractor. (49 C.F.R. § 376.12(c)(4).)

11

the FAA and Labor Code section 229.[13]  Petitioners were engaged to transport goods shipped from foreign ports to facilities throughout Southern California; as such, their contracts with Southern Counties may arguably come within the FAA's section 1 exemption.  (*Circuit City Stores, Inc. v. Adams*, *supra*, 532 U.S. at pp. 106, 119.)  These allegations necessitated the trial court's consideration and ruling on the issue whether the parties their agreements constitute contracts of employment of transportation workers within the meaning of the FAA's section 1 exemption.

## C.  Writ Relief is Warranted

An order compelling arbitration is not appealable.  (*Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 19.)  Review of an order compelling arbitration ordinarily must await appeal from a final judgment entered after arbitration.  (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648.)

Nevertheless, when warranted by the circumstances, immediate review of an order granting a motion to compel arbitration may be obtained by a petition for writ of mandate.  (*Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506, 513; *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1123.)  We find writ review appropriate here, because the order compelling arbitration was entered without having afforded the parties the hearing and consideration to which the law entitled them.

## Conclusion

Because the evidence proferred in opposition to the motion to compel arbitration provided sufficient grounds for a hearing on the issues whether the parties' agreements are exempt from the FAA's preemptive application, the order compelling arbitration must be set aside and the matter remanded to the superior court for appropriate consideration of that issue.

---

[13] This is an issue for determination by the trial court, not by arbitration.  (*Prima Paint Corp. v. Flood & Conklin Mfg. Co*. (1967) 388 U.S. 395, 404, [87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270].)

**Disposition**

Let a peremptory writ of mandate issue commanding respondent superior court to vacate its order compelling arbitration. The cause is remanded to the trial court for further proceedings consistent with this opinion, including any supplements to the motion and opposition that the court may find appropriate. Petitioners are entitled to costs on the original proceeding.

TO BE CERTIFIED FOR PUBLICATION.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


JOHNSON, J.

13