Filed 4/4/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FORD MOTOR WARRANTY CASES. | B312261 |
| MARTHA OCHOA, | JCCP No. 4856 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BC593397 |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant and Appellant. [And four other cases.*] | |

APPEAL from an order of the Superior Court of Los Angeles County. Amy Hogue, Judge. Affirmed.

Shook Hardy & Bacon, Amir Nassihi, Andrew L. Chang and Nalani L. Crisologo for Defendant and Appellant.

---

\* *Salcido v. Ford Motor Company* (No. B312345); *Davidson-Codjoe v. Ford Motor Company* (No. B312350); *Perez v. Ford Motor Company* (No. B312356); *Brito v. Ford Motor Company* (No. B312360).

Gupta Wessler, Jennifer Bennett, Linnet Davis-Stermitz; Kiesel Law, Paul R. Kiesel; Knight Law Group and Roger Kirnos for Plaintiffs and Respondents.

_____

This is an appeal of an order denying the motion of defendant Ford Motor Company (FMC) to compel arbitration of plaintiffs' claims relating to alleged defects in vehicles it manufactured. We agree with the trial court that FMC could not compel arbitration based on plaintiffs' agreements with the dealers that sold them the vehicles. Equitable estoppel does not apply because, contrary to FMC's arguments, plaintiffs' claims against it in no way rely on the agreements. FMC was not a third party beneficiary of those agreements as there is no basis to conclude the plaintiffs and their dealers entered into them with the intention of benefitting FMC. And FMC is not entitled to enforce the agreements as an undisclosed principal because there is no nexus between plaintiffs' claims, any alleged agency between FMC and the dealers, and the agreements.

Because we conclude that FMC was not entitled to compel arbitration, we need not consider whether it waived any right to so do.

## BACKGROUND

Each plaintiff bought a Ford vehicle—i.e., one manufactured by FMC—from a motor vehicle dealer in Southern California. In each instance, they signed a preprinted form contract entitled "**RETAIL INSTALLMENT SALE CONTRACT—SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)**." We refer to these as the sale contracts. Plaintiffs executed the sale contracts because they elected to finance, rather than pay cash, for their Ford vehicles.

2

The sale contracts are between the vehicle purchaser, on the one hand, and the selling dealer, on the other. The purchaser is referred to as the "Buyer" or "you," and the selling dealer is referred to as the "Creditor - Seller," "we," or "us." FMC is not a party to the sale contracts and is not named in the sale contracts.

Each sale contract identifies the vehicle sold, makes "**TRUTH-IN-LENDING**" and other financing disclosures, sets forth the repayment schedule, and itemizes the amount financed. The itemizations include every charge and credit relating to the sale transactions. These are not limited to the cost of the vehicles or payments already made. Rather, they include related purchases from, or other payments to, third parties arising in connection with the sale. For example, plaintiff Mathew Davidson-Codjoe financed with the cost of his vehicle the following additional items: sales tax to the State of California; optional theft deterrents provided by "Vehicle Theft Protec," "Express Code Etch," and "GPS1"; an electronic vehicle registration or transfer charge to "MVSC"; three optional Ford vehicle service plans; "gap" insurance from "Express Gap 61-72"; and other governmental fees. The form sale contract also contemplated other add-ons the purchaser could buy and finance through the dealer, such as vehicle insurance and credit insurance from a third party.

Although the sale contracts contemplate the purchase of service, warranty, and insurance contracts relating to the vehicle sale, they do not contain comprehensive terms of any of these contracts. Not only do the sale contracts not contain any terms of warranty coverage; the dealer expressly disclaims any warranty. However, the dealer qualifies that this disclaimer "does not affect

any warranties covering the vehicle that the vehicle manufacturer may provide."

The sale contracts also contain an arbitration provision. In relevant part, it provides "**EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**" It later elaborates: "[a]ny claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claims or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase, or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who did not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."

Plaintiffs experienced problems with the transmissions in their Ford Focus and Fiesta model vehicles. In 2015 and 2016, they sued FMC but did not sue the dealer parties to the sale contracts. Their theories variously included violations of the Song-Beverly Consumer Warranty Act and the federal Magnuson-Moss Warranty—Federal Trade Commission Improvement Act; breach of the implied warranty of merchantability; and fraudulent inducement. Many other purchasers of the same models of Ford vehicles had similar issues and filed similar lawsuits. On FMC's motion, plaintiffs' and certain other purchasers' lawsuits were administered as a coordinated proceeding beginning in 2016.

In August 2020, FMC filed a motion to compel arbitration of plaintiffs' claims based on the arbitration provision in the sale

contracts. FMC argued that agency allegations in plaintiffs' complaints entitled it to enforce the provision as an undisclosed principal; that it was an intended third party beneficiary of the provision; and that plaintiffs were equitably estopped from avoiding the obligation to arbitrate in the sale contracts when suing on warranties acquired upon purchase of their vehicles.

Plaintiffs opposed FMC's motion, including on the grounds that FMC had waived its right to compel arbitration through its litigation conduct. The trial court denied FMC's motion on its merits. FMC timely appealed.

## DISCUSSION

### 1. Standard of Review

The parties did not dispute the sale contracts' terms or authenticity. The trial court did not resolve factual issues when it denied FMC's motion to compel. Whether FMC is entitled to compel arbitration is therefore a question of law we review de novo. (See *Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541 [" 'Ordinarily, we review a denial of a petition to compel arbitration for abuse of discretion. [Citation.] However, where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo.' "].)

### 2. Governing Law

The trial court found, and the parties agree, that the sale contracts are governed by the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.). The FAA manifests a policy favoring arbitration. (*Morgan v. Sundance, Inc.* (2022) __ U.S. __ [142 S.Ct. 1708, 1713].) It does so by requiring courts to enforce agreements to arbitrate to the same extent as any other contract. (See 9 U.S.C. § 2; see also *Morgan v. Sundance, Inc.*, at p. __

5

[142 S.Ct. at p. 1713] ["[t]he policy is to make 'arbitration agreements as enforceable as other contracts, but not more so' "].)

"[N]o public policy favors requiring arbitration of issues that the parties have not agreed to arbitrate." (*Garcia v. Superior Court* (2015) 236 Cal.App.4th 1138, 1144; see also *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648.)  That is because it is a "foundational FAA principle that arbitration is a matter of consent." (*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662, 684; see also *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 ["it is a cardinal principle that arbitration under the FAA 'is a matter of consent, not coercion' "].)

"Although the FAA preempts any state law that stands as an obstacle to its objective of enforcing arbitration agreements according to their terms, . . . we apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute." (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 59-60, citation omitted.)  "General contract law principles include that '[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.  [Citations.]  . . .  "The words of a contract are to be understood in their ordinary and popular sense." '  [Citation.]  Furthermore, ' "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." ' "  (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227.)

Under certain circumstances, a nonsignatory to an arbitration agreement may seek to enforce it against a signatory.

Whether such enforcement is permissible is a question of state law. (*Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1128; *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614, fn. 7.) We therefore look to California law to determine whether FMC, as a nonsignatory to the sale contracts, may compel plaintiffs to arbitrate.

**3.   Analysis**

For the reasons that follow, we agree with the trial court that FMC failed to establish any right to compel arbitration under the sale contracts—not under the doctrine of equitable estoppel, not as a third party beneficiary, and not as an undisclosed principal. As FMC had no such right, we need not reach the question of whether FMC waived the claimed right through its litigation conduct.

**a.    Equitable estoppel does not apply because FMC fails to show plaintiffs' claims against it are founded in or intertwined with the sale contracts.**

FMC argues it is entitled to compel arbitration under the doctrine of equitable estoppel. As recently explained in *Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486 (*Felisilda*), equitable estoppel allows a nonsignatory defendant to " ' "invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." [Citations.] "By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement." [Citations.]' [Citation.] [¶] 'Where the equitable estoppel

7

doctrine applies, the nonsignatory has a right to enforce the arbitration agreement.' [Citation.] ' "The fundamental point" is that a party is "not entitled to make use of [a contract containing an arbitration clause] as long as it worked to [his or] her advantage, then attempt to avoid its application in defining the forum in which [his or] her dispute . . . should be resolved." ' [Citation.] 'In *any* case applying equitable estoppel to compel arbitration despite the lack of an agreement to arbitrate, a nonsignatory may compel arbitration only when the claims against the nonsignatory are founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause*.' [Citation.] In determining whether plaintiffs' claim is founded on or intimately connected with the sale[] contract, we examine the facts of the operative complaint." (*Id*. at pp. 495–496.)

FMC argues that plaintiffs' claims are "intimately founded in and intertwined with the underlying obligations of the sale[] contracts" because the sale contracts between plaintiffs and the dealers gave plaintiffs certain contractual rights they now sue on—warranty claims against the manufacturer. We disagree.

FMC's argument proceeds along two lines. The first is that automobile warranty claims are founded in and intertwined with sales contracts in California as a matter of law. This argument relies on *Felisilda*, *supra*, 53 Cal.App.5th 486, in which our colleagues in the Third District determined that equitable estoppel required vehicle purchasers to arbitrate their claim against FCA, a vehicle manufacturer like FMC, pursuant to a dealer sale contract containing the same form arbitration provision at issue here. (*Id*. at pp. 489–490.) The second is that breaches of warranties are generally treated as breaches of

8

contract, so breaches of any warranties that accompanied the sale contract are necessarily intertwined with the sale contract. We explain below why we reject each of these arguments.

### i. We decline to follow *Felisilda.*

The plaintiffs in *Felisilda* asserted a single cause of action against FCA for violation of the Song-Beverly Consumer Warranty Act based on FCA's failure to repair or otherwise remedy defects in a used Dodge Caravan they bought from a Dodge dealer. (*Felisilda*, *supra*, 53 Cal.App.5th at p. 491.) Relying on the doctrine of equitable estoppel, the *Felisilda* court concluded the plaintiffs were bound to arbitrate with FCA under the plaintiffs' sale contract with the dealer for three reasons. First, the court reasoned that the condition of the vehicle was within the subject matter of the claims made arbitrable under the sale contract. (*Id.* at p. 496.) Second, based only on the plaintiffs' allegation that the vehicle was covered by FCA's warranties, the court found "the sales contract was the source of the warranties." (*Ibid.*) Third, the court noted the plaintiffs had "expressly agreed to arbitrate claims arising out of the condition of the vehicle— even against third party nonsignatories to the sales contract." (*Id.* at p. 497.) We respectfully disagree with *Felisilda*'s analysis for the following reasons.[1]

That the *Felisilda* plaintiffs and the *dealer* agreed in their sale contract to arbitrate disputes between them about the condition of the vehicle does not equitably estop the plaintiffs

---

[1] FMC incorrectly refers to *Felisilda* as "binding precedent." As plaintiffs observe, " 'there is no horizontal stare decisis in the California Court of Appeal,' " and this court is not bound by another California Court of Appeal's decision. (*Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193–1194.)

9

from asserting *FCA* has no right to demand arbitration. Equitable estoppel would apply if the plaintiffs had sued FCA based on the terms of the sale contract yet denied FCA could enforce the arbitration clause in that contract. (*Felisilda*, *supra*, 53 Cal.App.5th at pp. 495–496.) That is not what the plaintiffs did in *Felisilda*.

The plaintiffs' breach of warranty claims against FCA in *Felisilda* were not based on their sale contracts with the dealers. We disagree with *Felisilda* that "the sales contract was the source of [FCA's] warranties at the heart of this case." (*Felisilda*, *supra*, 53 Cal.App.5th at p. 496.) As we discuss further below, manufacturer vehicle warranties that accompany the sale of motor vehicles without regard to the terms of the sale contract between the purchaser and the dealer are independent of the sale contract.

We also disagree with the *Felisilda* court's interpretation of the sale contract as broadly calling for arbitration of claims "against third party nonsignatories." (*Felisilda*, *supra*, 53 Cal.App.5th at p. 497.) The *Felisilda* court relied on the following italicized language to conclude that third parties could enforce the arbitration provision: " 'Any claim or dispute, whether in contract, tort, statute or otherwise . . . , between you and us or our employees, agents, successors or assigns, which arises out of or relates to . . . purchase or condition of this vehicle, the cont[r]act or any resulting transaction or relationship (*including any such relationship with third parties who do not sign this contract*) shall, at your or our election, be resolved by neutral, binding arbitration . . . .' " (*Id*. at p. 498.)

We do not read this italicized language as consent by the purchaser to arbitrate claims with third party nonsignatories.

10

Rather, we read it as a further delineation of the *subject matter* of claims the purchasers and dealers agreed to arbitrate. They agreed to arbitrate disputes "between" *themselves*—"you and us"—arising out of or relating to "relationship[s]," including "relationship[s] with third parties who [did] not sign th[e] [sale] contract[s]," resulting from the "purchase, or condition of th[e] vehicle, [or] th[e] [sale] contract."

Purchasers, like plaintiff Mathew Davidson-Codjoe, whose sale contract we described above, can elect to buy insurance, theft protection, extended warranties and the like from third parties, and they can finance their transactions with those third parties under the sale contracts. The "third party" language in the arbitration clause means that if a purchaser asserts a claim against the dealer (or its employees, agents, successors or assigns) that relates to one of these third party transactions, the dealer can elect to arbitrate that claim. It says nothing of binding the purchaser to arbitrate with the universe of unnamed third parties.

### ii. Plaintiffs' claims are not founded in the sale contracts.

Most of the plaintiffs attached their sale contracts as an exhibit to their complaints. Some did so in support of general allegations about when they bought their vehicles and to identify their vehicles by make and model. Others attached their sale contracts in support of allegations the sale contracts were accompanied by implied warranties under the Song-Beverly Consumer Warranty Act. But no plaintiffs alleged violations of the sale contracts' express terms. Rather, plaintiffs' claims are based on FMC's statutory obligations to reimburse consumers or replace their vehicles when unable to repair in accordance with

11

its warranty.  Certain plaintiffs also sued on theories of breach of implied warranty of merchantability and fraudulent inducement.  Not one of the plaintiffs sued on any express contractual language in the sale contracts.

The sale contracts include no warranty, nor any assurance regarding the quality of the vehicle sold, nor any promise of repairs or other remedies in the event problems arise.  To the contrary, the sale contracts disclaim any warranty on the part of the dealers, while acknowledging no effect on "any warranties covering the vehicle that the vehicle manufacturer may provide." In short, the substantive terms of the sale contracts relate to sale and financing and nothing more.

FMC's argument that plaintiffs' manufacturer warranty claims are founded in the sale contracts because California law treats all warranty claims as contract claims is not supported by California law.

California law does not treat manufacturer warranties imposed outside the four corners of a retail sale contract as part of the sale contract.  In *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 (*Greenman*), our Supreme Court distinguished between, on the one hand, warranty obligations flowing from the seller to the buyer by contract, and, on the other hand, manufacturer warranties "that arise[] *independently of a contract of sale* between the parties."  (*Id.* at p. 60, italics added; see also *Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints v. Cavanaugh* (1963) 217 Cal.App.2d 492, 514 (*Cavanaugh*) [manufacturer's express warranty "was *not part of a contract of sale* between the manufacturer and the plaintiff" (italics added)].)

FMC only acknowledges these authorities in its reply, dismissing them as "dat[ing] back nearly sixty years." But it cites no more recent authority establishing that manufacturer warranty obligations are implied terms in a retailer's sale contract. FMC cites authorities that warranty claims are treated *like* contract claims: California Uniform Commercial Code section 2725 (limitations period for breach of warranty governed by same provision as governing breach of sale contract claims); *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 642 (same); *Cardinal Health 301, Inc. v. Tyco Electronics Corp.* (2008) 169 Cal.App.4th 116, 134–135 (same). But, contrary to FMC's assertion, it does not "naturally follow" from any contractual character of manufacturer warranty claims that they inhere in a retail sale contract containing no warranty terms. Following *Greenman*, *supra*, 59 Cal.2d 57, and *Cavanaugh*, *supra*, 217 Cal.App.2d 492, independent manufacturer warranties are not part of, but are independent from, retail sale contracts.

Again, the " ' "fundamental point" ' " of using equitable estoppel to compel arbitration is to prevent a party from taking advantage of a contract's substantive terms while avoiding those terms requiring arbitration. (*Felisilda*, *supra*, 53 Cal.App.5th at p. 496.) Plaintiffs' claims in no way rely on the sale contracts. Equitable estoppel does not apply.

**b. FMC was not a third party beneficiary of the sale contracts.**

" 'A third party beneficiary is someone who may enforce a contract because the contract is made expressly for his benefit.' " (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 301; see also Civ. Code, § 1559 ["[a] contract, made expressly for the benefit of a third person, may be enforced by him . . . ."].) A

13

person "only incidentally or remotely benefited" from a contract is not a third party beneficiary. (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 590.) Thus, "the 'mere fact that a contract results in benefits to a third party does not render that party a "third party beneficiary." ' " (*Jensen*, at p. 302.) Nor does knowledge that the third party may benefit from the contract suffice. (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830 (*Goonewardene*).) Rather, the parties to the contract must have *intended* the third party to benefit. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 [" '[a] putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit' it"].)

To show the contracting parties intended to benefit it, a third party must show that, under the express terms of the contract at issue and any other relevant circumstances under which the contract was made, (1) "the third party would in fact benefit from the contract"; (2) "a motivating purpose of the contracting parties was to provide a benefit to the third party"; and (3) permitting the third party to enforce the contract "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Goonewardene, supra,* 6 Cal.5th at p. 830.)

The trial court here found FMC could not compel arbitration as a third party beneficiary because it failed to address the *Goonewardene* requirements. FMC addresses them in its opening brief but only in cursory fashion. As to the benefit requirement, it contends that, as the vehicle manufacturer, FMC "benefits from the sale[] contracts the dealers execute to sell Ford[] vehicles," and "[FMC] would benefit from utilizing arbitration as an efficient means of dispute resolution." As to the intent to benefit FMC—the "motivating purpose" requirement—it

14

points, without elaboration, to the "broad language expressly encompassing claims arising out of relationships or transactions 'with third parties who do not sign th[e] [sale] contract' . . . ." And, because FMC contends that plaintiffs seek to hold it liable "based on alleged agency and warranty relationships between [FMC] and the dealers and/or between [FMC] and [plaintiffs]," FMC argues permitting it to enforce the arbitration provision is consistent with the objectives of the sale contracts and the parties' reasonable expectations.

In response, plaintiffs argue FMC can satisfy none of the *Goonewardene* requirements. As part of their analysis, plaintiffs discuss the Ninth Circuit Court of Appeal's recent decision in *Ngo v. BMW of North America* (9th Cir. 2022) 23 F.4th 943 (*Ngo*). Federal authority is not binding on this court, but we discuss *Ngo* here at some length because we find it persuasive. (See, e.g., *Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 334 ["federal decisions on questions of state law can be persuasive authority"], citing 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 507, p. 571; *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 770 [" '[w]hile decisions of federal courts in matters of state law are not binding on state courts, they may be persuasive' "].)

*Ngo* involved efforts by BMW, a vehicle manufacturer like FMC, to compel arbitration under a sale contract containing the same form arbitration provision at issue here. The *Ngo* court reversed the district court's order compelling arbitration, finding that BMW was neither a third party beneficiary under California law nor entitled to compel arbitration on equitable estoppel grounds. (*Ngo, supra,* 23 F.4th at pp. 946–950.)

15

As to BMW's claimed third party beneficiary status, *Ngo* found that it satisfied none of the *Goonewardene* requirements. It found the arbitration provision did not benefit BMW because it was "pellucid that only three parties [(the purchaser, the dealer, and its assignee)] may compel arbitration, none of which is BMW." (*Ngo, supra,* 23 F.4th at p. 947.) Second, it found BMW failed to show the dealer and purchaser had a "motivating purpose" to benefit it. Based on the limitations on who could compel arbitration, the court found "[n]othing in the clause or, for that matter, in the purchase agreement reflects any intention to benefit BMW by allowing it to take advantage of the arbitration provision." (*Id.* at p. 948.) Rather, it found the sale contract "was drafted with the primary purpose of securing benefits for the contracting parties themselves. . . . [T]he purchaser s[ought] to buy a car, and the dealership and assignee[] s[ought] to profit by selling and financing the car. Third parties are not purposeful beneficiaries of such an undertaking." (*Id.* at p. 947.) Third, it found that allowing BMW to enforce the arbitration provision would not be consistent with the " 'objectives of the contract' and the reasonable expectations of the contracting parties.' " (*Id.* at p. 948.) Among the reasons it offered was that the clause specifically identified *who* could compel arbitration, demonstrating that "the parties knew how to give enforcement powers to non-signatories when they wished to but gave none to BMW. . . . [¶] . . . [¶] . . . BMW's relative proximity to the contract confirms that the parties easily could have indicated that the contract was intended to benefit BMW—but did not do so." (*Ibid.*)

We agree with *Ngo* that the sale contracts reflect no intention to benefit a vehicle manufacturer under *Goonewardene*.

First, nothing in the sale contracts or their arbitration provision offers any direct "benefit" to FMC (*Goonewardene*, *supra*, 6 Cal.5th at p. 830). FMC's claim that it "*would* benefit from utilizing arbitration as an efficient means of dispute resolution" (italics added) *if* treated as a third party beneficiary begs the question: *does* the provision directly benefit FMC? The answer is patently "no." Its direct benefits are expressly limited to those persons who might rely on it to avoid proceeding in court—the purchaser, the dealer, and the dealer's employees, agents, successors or assigns. FMC is none of these.

Second, there is no indication that a benefit to FMC was the signatories' "motivating purpose" (*Goonewardene*, *supra*, 6 Cal.5th at p. 830) in contracting for the sale and purchase of a Ford vehicle. The manifest intent of the parties was to buy, sell and finance a car, and to allow either the purchaser or the dealer to compel arbitration of the specified categories of disputes between them, or between the purchaser and any of the dealer's "employees, agents, successors or assigns." (See *Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 967 [intent of arbitration agreement ascertained solely from words of written agreement, if possible; language controls if clear and explicit].)

Any interest FMC may have in where its dealers and consumers choose to resolve their disputes is remote and certainly not articulated in FMC's briefing. If the signatories had intended to benefit FMC, such a purpose would have been easy to articulate. They could have simply named FMC—directly or by class as the vehicle's manufacturer—as a person entitled to compel arbitration. But they did not. What they said was that "*EITHER YOU OR WE*"—the purchaser or the dealer—"**MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US**

17

**DECIDED BY ARBITRATION**," and reiterated that arbitrable disputes "shall, *at your or our*"—the purchaser's or the dealer's— "election, be resolved by neutral, binding arbitration . . . ." (Italics added.)

FMC contorts the meaning of the arbitration clause when it claims the reference to "third parties who do not sign this contract" gives it a right to arbitrate. As already discussed, this reference concerns *what* may be arbitrated, not *who* may arbitrate. *Who* may enforce an arbitration agreement is a separate matter from the types of disputes the agreement covers. (See *Ngo, supra,* 23 F.4th at p. 948 ["Although the arbitration clause may have extended to claims regarding the purchase of the vehicle, it does not follow that additional *parties* can enforce the arbitration clause"].) The parties' choice of the *subject* of the disputes they agree to arbitrate does not evince an intention to benefit nonparties so as to affect *who* is entitled to compel arbitration.

That FMC may have provided a financial incentive to facilitate some sales also does not affect the analysis. FMC points out that two of the plaintiffs' sale contracts show they received manufacturer rebates in connection with the purchase of their vehicles. FMC fails to explain how providing incentives to encourage consumers to buy Fords from its dealers evidences an intention by the purchaser and dealer to benefit FMC. A manufacturer profits from its sales to dealers, and dealers profit from their sales to consumers, and the more cars a dealer sells, the more cars it is likely to buy from FMC. That basic aspect of retail sales does not in and of itself imply a shared intent of the dealer and consumer to benefit FMC. A manufacturer's rebate to the consumer does not, without more, make the manufacturer a

18

third party beneficiary of the retail sale and financing contract between the dealer and purchaser, nor does it give the manufacturer a right to enforce the arbitration clause.

Finally, allowing FMC to enforce the arbitration provision as a third party beneficiary would be inconsistent with the "reasonable expectations of the contracting parties" (*Goonewardene*, *supra*, 6 Cal.5th at p. 830) where they twice specifically vested the right of enforcement in the purchaser and the dealer only.

### c. Plaintiffs' purported agency allegations are insufficient to permit FMC to compel arbitration as an undisclosed principal.

"A nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." (*Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.* (2005) 129 Cal.App.4th 759, 765.) Whether a nonsignatory has rights under an arbitration agreement through some agency relationship is dictated by the ordinary principles of contract and agency law. (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 860 (*Cohen*), quoting 21 Williston on Contracts (4th ed. 2017) § 57:19, p. 194.)

FMC relies on *Cohen*, *supra*, 31 Cal.App.5th 840, for the proposition that "a nonsignatory defendant [may] compel a signatory plaintiff to arbitrate where there is a connection between the claims alleged against the nonsignatory and its agency relationship with a signatory." (*Id*. at p. 863.) The

19

authorities *Cohen* cites establishing the affirmative right of a nonsignatory to compel arbitration show that such connection must also extend to the agreement to arbitrate. (See *id.* at pp. 863–864, citing *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [explaining that in *Dryer* "nonsignatory agents were entitled to enforce a contract's arbitration provision where the plaintiff sued them in their capacities as agents for the signatory and the significant issues in the dispute *arose out of the contractual relationship between the parties*" (italics added)] and Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2018) ¶ 5:266.5, p. 5–282 [explaining that, according to the Rutter Guide, nonsignatories are permitted to "enforce an arbitration agreement where the claims against the nonsignatory 'aris[e] *under the contract' containing an arbitration provision*, 'but not other claims' " (italics added)].) *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, cited by FMC, similarly reflects a nexus between the claims, the agency allegations, and the contract containing the arbitration provision. The court interpreted the central joint employer allegations as making the defendants agents of one another in all their "dealings with [the plaintiff]." (*Id.* at p. 788.) This necessarily included the plaintiff's employment agreement with one of the defendants, which contained the arbitration provision and "governed" the plaintiff's claims against both defendants. (*Id.* at p. 787.)

Here, there is no connection between each of (1) plaintiffs' claims against FMC; (2) any alleged agency relationship between FMC and the dealers; and (3) the sale contracts between the dealers and plaintiffs. The sole dealer-FMC agency allegation that is clearly articulated in some of the complaints is that the

20

dealers are FMC's authorized "agents for *vehicle repairs*." (Italics added.) When FMC has to fix something under warranty, consumers can go to a dealer to get it fixed. This does not mean the dealers are FMC's agents in connection with the sale of vehicles to consumers that the dealer bought from FMC. The other agency allegations in this case are so vague that it is difficult to ascertain what they mean at all.

FMC contends that plaintiffs' "theory of liability is based on a principal-agent relationship between Ford and the dealers." Plaintiffs, while not repudiating any purported agency, respond that FMC's claimed right to compel arbitration as an undisclosed principal "depends entirely on allegations the plaintiffs did not actually make—and that [FMC] itself, apparently, disputes." Indeed, FMC does not admit that plaintiffs' dealers are its agents and "reserves the right to dispute (at trial or arbitration) whether [plaintiffs] can meet their burden of proving liability based on an agency relationship."

FMC catalogues the purported agency allegations most helpful to it in its opening brief, but none clearly states that the dealers acted as FMC's agents. Rather, all references to FMC's "agents" are ambiguous. For example, plaintiffs allege that they relied on "*[FMC] and its agent's* omissions and/or misrepresentations"; that "*[FMC] and its agents* intentionally concealed and failed to disclose facts"; and that "[FMC] and *its agents* actively concealed the existence and nature of the Transmission Defect." These allegations do not establish agency between FMC and the dealers. Any allegation of wrongdoing by FMC necessarily entails actions of its agents. (See *Kelly v. General Telephone Co.* (1982) 136 Cal.App.3d 278, 286 ["A corporation can act only through its agents"].) But alleged

21

wrongdoing by FMC's unspecified agents does not necessarily entail wrongdoing by plaintiffs' dealers.

Plaintiffs also allege they relied on "statements made during the sales process by [FMC]'s agents and within the marketing brochures provided by [FMC]." But, again, they do not specifically identify who these purported agents are. In the context of the complaints, these allegations could be read to refer to the dealers' employees; but they could just as well be read as referring to FMC's employees who prepared the vehicle window stickers or authorized the copy in the marketing brochures. Indeed, three of the four complaints refer to "statements on the window sticker" that plaintiffs reviewed prepurchase in the immediately preceding paragraph. These perfunctory references to FMC's "agents" lack clarity and substance. They also lack connection to plaintiffs' claims and the sale contracts.

FMC urges that plaintiffs' fraudulent inducement causes of action are based on an alleged agency relationship between FMC and its dealers. This is not true. The specific allegations supporting the misrepresentation causes of action are that plaintiffs, in making their purchasing decisions, relied on *FMC*'s statements in a marketing brochure and, in particular cases, the window sticker or an FMC press release as well. These allegations make no reference to any other alleged misrepresentations—not by the dealers; not by dealers' salespeople.

Likewise, the concealment allegations do not rest on an agency relationship. While plaintiffs allege FMC communicated some information about vehicle defects to its dealers, we are directed to no allegations that the dealers from which plaintiffs bought their cars knew the legally significant information that

22

FMC allegedly concealed from plaintiffs. To have fraudulently concealed information on FMC's behalf, it is necessary that the dealers had that information. (See *Assilzadeh v. Cal. Fed. Bank* (2000) 82 Cal.App.4th 399, 411 [no duty to disclose information not known]; *San Diego Hospice v. County of San Diego* (1995) 31 Cal.App.4th 1048, 1055 [duty to disclose requires knowledge of legally significant facts].) But the only entity alleged to have full knowledge of the relevant facts allegedly concealed—knowledge that was "superior and exclusive"— is FMC.

Perhaps recognizing the lack of concrete agency allegations in the complaints, FMC introduces evidence that other plaintiffs sought to treat dealers as FMC's agents in related proceedings. But FMC directs us to no authority where conduct of other plaintiffs in other proceedings was considered in evaluating whether the allegations of a complaint sufficed to satisfy the agency exception to the usual rule that only a signatory to an arbitration agreement is entitled to enforce it.

Ambiguities in the allegations aside, even if plaintiffs did adequately allege that the dealers acted as FMC's agents in misrepresenting the qualities of the vehicles prior to sale, any nexus with the sale contracts, and thus the right to compel arbitration, is lacking. There are no allegations to support the conclusion that the dealers acted as FMC's agent in executing the sale contracts. "Generally, retailers are not considered the agents of the manufacturers whose products they sell." (*Murphy v. DirecTV, Inc.* (9th Cir. 2013) 724 F.3d 1218, 1232 [applying California law], citing Rest.3d Agency (2006) § 1.01, com. g; *Alvarez v. Felker Mfg. Co.* (1964) 230 Cal.App.2d 987, 1000.) There are no allegations that the vehicles sold belonged to FMC,

as opposed to the dealer.  There are no allegations that FMC, rather than the dealer, financed the sales.  There are no allegations that FMC controlled or had any direct interest in the transactions.  In short, there are no allegations that the dealers were transacting other than for their own account in entering into the sale contracts.

Finally, FMC argues that plaintiffs request relief that would only be available if the dealers were agents for FMC.  Requests for relief do not amount to allegations and we will not infer allegations from them.  It is allegations that show entitlement to relief and not the other way around.

In short, in the absence of some nexus between the agency allegations, plaintiffs' claims, and the sale contracts, FMC is not entitled to compel plaintiffs to arbitrate as an undisclosed principal.

## DISPOSITION

The trial court's order denying FMC's motion to compel arbitration is affirmed.  Plaintiffs are to recover their costs on appeal.


GRIMES, J.


WE CONCUR:



STRATTON, P. J.



VIRAMONTES, J.


24